T-JAC, INC. (WAL-MART CAGUAS), peticionaria y recurrida, *v.* CAGUAS CENTRUM LIMITED PARTNERSHIP, S.E. y MANLEY BERENSON ASSOCIATES PUERTO RICO, interventores y recurrentes, y JUNTA DE PLANIFICACIÓN, recurrida y peticionaria.

*Números:* CC-98-9 *Resueltos:* 12 de abril de 1999
CC-98-33

74

*Ana L. Toledo Dávila* y *Juan R. Marchand Quintero*, del *Bufete Rivera Cestero & Marchand Quintero*, abogados del peticionario T-JAC, Inc.; *Wanda Ortiz Rivera*, abogada de la peticionaria Junta de Planificación; *Leonor Porrata-Doria*, abogada del interventor recurrente.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

Los peticionarios, T-JAC, INC. (Wal-Mart de Caguas) y la Junta de Planificación de Puerto Rico, cuyos casos han sido consolidados, recurren de la sentencia del Tribunal de Circuito de Apelaciones (Circuito Regional de Caguas, Humacao y Guayama) dictada el 19 de mayo de 1997 y notificada el 23 de mayo de 1997. En dicha sentencia el foro apelativo revocó una resolución de la Junta de Planificación, fechada el 6 de diciembre de 1995, que autorizó una consulta de ubicación de un desarrollo extenso para la construcción de un edificio, cuyo uso sería dedicado a ventas al detal de una tienda Wal-Mart. Caguas Centrum Limited Partnership, S.E. solicitó reconsideración, la cual fue denegada. Examinemos los hechos que dan lugar al recurso de autos.

I

La Junta de Planificación aprobó, mediante su resolución de 2 de marzo de 1988, una consulta de ubicación para un proyecto industrial liviano en una finca de 29.20 cuerdas, en el barrio Bairoa de Caguas. Según surge de las determinaciones de hecho de la resolución mencionada, ese predio está comprendido en su mayoría dentro de un Distrito R–1 (distrito residencial de baja densidad poblacional) y una pequeña porción al sureste en un Distrito I–1 (industrial liviano) en el Mapa de Zonificación de Caguas.

Utilizando parámetros de un Distrito I–1, se aprobó la formación de veintiocho (28) solares con cabidas fluctuantes entre los dos mil (2,000) y cuatro mil (4,000) metros cuadrados que serían vendidos para el establecimiento de usos de almacén, de un taller de reparación y otros usos industriales livianos. Consideró la Junta que la Sec. 46.01 del Reglamento de Zonificación de 14 de julio de 1992 (Reglamento de Planificación Núm. 4), Junta de Planificación, 23 R.P.R. sec. 650.1657, la faculta para considerar proyectos de desarrollo para industrias livianas en Distritos R–1, y que la Ley Núm. 75 de 24 de junio de 1975, según enmendada, conocida como la Ley Orgánica de la Junta de Planificación, 23 L.P.R.A. sec. 62 *et seq.*, en su Art. 14 (23 L.P.R.A. sec. 62m), le confiere a ese organismo autoridad para autorizar el uso de terrenos, *con sujeción a las normas y los requisitos consignados en la ley*, dentro de los límites territoriales del Estado Libre Asociado de Puerto Rico. La Administración de Reglamentos y Permisos (en adelante A.R.Pe.) aprobó un plano de desarrollo y el correspondiente permiso de urbanización para el proyecto industrial liviano.

El 8 de marzo de 1991, la Junta autorizó una enmienda a la consulta de ubicación a los fines de agrupar varios de los veintiocho (28) solares aprobados originalmente, en ocho (8) solares, cuyas cabidas fluctuarían entre tres mil cien (3,100) y cincuenta y siete mil quinientos cuarenta (57,540) metros cuadrados. Se expresó en la resolución al efecto, que estos solares serían utilizados para los usos originalmente aprobados por la Junta de Planificación y que se cumplirían con todas las demás condiciones requeridas en la consulta. Las demás disposiciones de la resolución anterior continuarían vigentes, incluyendo los parámetros de la zonificación I–1, a base de los cuales se aprobó originalmente la referida consulta. A.R.Pe. autorizó un plano de desarrollo preliminar alterno en consonancia con la consulta de ubicación enmendada, y el 9 de julio de 1991

aprobó un anteproyecto de construcción de un proyecto de comercio y almacén de distribución al por mayor en el predio de 57,539.97 metros cuadrados que correspondía al solar Núm. 8 y que Wal-Mart Puerto Rico, Inc. había adquirido el 29 de junio de 1991. El anteproyecto es la forma preliminar de un plano de construcción de obras así como de estructuras, que se somete a A.R.Pe. para determinar si cumple con las leyes y los reglamentos aplicables. Sec. 2 (Definiciones) del Reglamento de Planificación Núm. 4 (23 R.P.R. sec. 650.1648).

Conforme a dicha aprobación se autorizó preliminarmente la construcción de un edificio de una planta con un área de estacionamiento de novecientos ochenta y un (981) vehículos y la provisión de un área para carga y descarga con capacidad para más de diez (10) furgones, entre otros. El establecimiento en cuestión estaba destinado a ser utilizado como un Sam's Wholesale Club.

Sin embargo, el 21 de febrero de 1991 la Junta de Planificación había aprobado una resolución interpretativa de lo que significa o se define como comercio al detal y al por mayor. Por lo tanto, el 2 de marzo de 1994 A.R.Pe. concluyó que dentro de los parámetros de los Distritos I–1 no estaban permitidas las ventas al detal y que, aunque la parte peticionaria planteaba que su tipo de negocio era de ventas al por mayor, tanto el número de estacionamientos como de cajas registradoras eran indicativos de un establecimiento de ventas al detal, el cual no estaba permitido en una zonificación industrial. A tenor con lo antes expresado, el 2 de marzo de 1994 A.R.Pe. revocó el anteproyecto de construcción previamente aprobado.

La parte proponente presentó una moción de reconsideración, la cual fue denegada mediante resolución el 22 de abril de 1994; en ella A.R.Pe. tomó conocimiento oficial de otra solicitud de Wal-Mart para construir un establecimiento Sam's Wholesale Club en Bayamón, donde lo que se solicitaba era un permiso de construcción para un *comercio*

*al detal.* El Administrador de A.R.Pᴇ. consideró que era incompatible la presentación de dos (2) conceptos de ventas diametralmente opuestos para un mismo uso.

Así las cosas, el 10 de noviembre de 1994, T-JAC, Inc. solicitó ante la Junta de Planificación otra enmienda a la consulta de ubicación, para cambiar el proyecto de desarrollo industrial liviano previamente aprobado a uno comercial. El nuevo proyecto propuesto estaría ubicado en el solar Núm. 8 y consistiría en el establecimiento de una tienda por departamentos Wal-Mart de ventas al detal. Constaría de un edificio de ciento cincuenta mil (150,000) pies cuadrados y mil cinco (1,005) espacios de estacionamientos en un área de 14.63 cuerdas que ubican en un Distrito R–1, con una inversión de tres millones (3,000,000) de dólares.

La Junta de Planificación ordenó la celebración de una vista pública para discutir la enmienda a la consulta de ubicación, esta vez para considerar el mencionado proyecto comercial, cuya vista fue celebrada el 11 de abril de 1995. Luego de escuchar los planteamientos de la parte proponente, los opositores al proyecto y al público en general, la Junta autorizó la ubicación del proyecto mediante la resolución de 6 de diciembre de 1995. Luego de varios incidentes procesales, los interventores, Caguas Centrum Limited Partnership, S.E. y otros, presentaron un recurso ante el Tribunal de Circuito de Apelaciones,[1] en el cual señalaron como errores: haber concluido los procedimientos como una enmienda a la consulta de ubicación original 87–46–1210 JPU; no determinar la procedencia de la variación ni sobre las circunstancias especiales o excepcionales que motivaron la autorización de la consulta, y no evaluar el caso de acuerdo con las disposiciones de la Ley sobre Política

---

[1] El 6 de marzo de 1996 los recurrentes presentaron un recurso de revisión ante el Tribunal de Primera Instancia, Sala Superior de Caguas. En conformidad con lo dispuesto en el Art. 9.004(a) de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 23e(a)), según enmendada, se refirió el caso al Tribunal de Circuito de Apelaciones.

Pública Ambiental. El Tribunal de Circuito de Apelaciones acogió el planteamiento de los allí peticionarios y revocó la resolución de la Junta. Inconformes, los peticionarios T-JAC, Inc. y la Junta de Planificación acuden ante nos y señalan que incidió el Tribunal de Circuito de Apelaciones al concluir que la Junta de Planificación no tenía la facultad para aprobar la consulta como una enmienda a la consulta original; al concluir que la Junta no podía aprobar la consulta de ubicación al amparo de la Sec. 97 del Reglamento de Planificación Núm. 4 (23 R.P.R. sec. 650.1745) sin expresamente conceder una variación al uso o en su defecto rezonificar el distrito, y al concluir que procedía requerir una Declaración de Impacto Ambiental (D.I.A.).

Examinados los autos originales y las posiciones de las partes en conjunto con la totalidad del expediente administrativo, resolvemos.

## II

Es una norma de derecho claramente establecida que los tribunales apelativos han de conceder una gran consideración y deferencia a las decisiones administrativas en vista de la vasta experiencia y el conocimiento especializado de la agencia, por lo que la revisión judicial está limitada a determinar si la actuación administrativa fue razonable y cónsona con el propósito legislativo o si, por el contrario, fue irrazonable, ilegal o si medió abuso de discreción. Véanse: *Rivera v. A & C Development Corp.*, 144 D.P.R. 450 (1997); *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866, 879 (1993). La Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, en su Sec. 4.5 (3 L.P.R.A. sec. 2175), delimita el alcance de la revisión judicial de las decisiones administrativas al establecer que las determinaciones de hecho de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obre en el expediente ad-

ministrativo; no obstante, las cuestiones de derecho que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia son revisables en toda su extensión. Véanse: 3 L.P.R.A. sec. 2175; *Rivera v. A & C Development Corp.*, supra, pág. 461; *Miranda v. C.E.E.*, 141 D.P.R. 775 (1996). Cuando la interpretación que del estatuto hace la agencia produce resultados incompatibles, contrarios al propósito de la ley, ésta no puede prevalecer. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 D.P.R. 425 (1997).

■ Las agencias administrativas están obligadas a observar estrictamente las reglas que ellas mismas promulgan. *García Cabán v. U.P.R.*, 120 D.P.R. 167, 175 (1987). Una vez se ha adoptado una norma, la agencia administrativa debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, los objetivos y la política pública que la forjaron. La agencia reguladora debe velar por que los requisitos estatutarios establecidos en su reglamento sean cumplidos. *Montoto v. Lorie*, 145 D.P.R. 30 (1998).

■ El Reglamento de Planificación Núm. 4 (23 R.P.R. sec. 650.1638 *et seq.* (1997)), fue adoptado al amparo de la Ley Orgánica de la Junta de Planificación de Puerto Rico, y tiene como propósito guiar y controlar el uso y desarrollo de los terrenos con el fin de contribuir a la seguridad, el orden, la convivencia, la solidez económica y el bienestar general de los actuales y futuros habitantes. La zonificación constituye el mecanismo mediante el cual se establecerán o fijarán los usos adecuados para todos los terrenos del país y de las islas adyacentes que le pertenecen. Secs. 1.00–1.03 del Reglamento de Planificación Núm. 4 (23 R.P.R. sec. 650.1641). Es un instrumento para clasificar y designar terrenos en zonas y distritos y se establecen, para cada zona y distrito, las normas esenciales sobre cómo y dónde deben ubicarse las múltiples actividades sociales y económicas de Puerto Rico y disposicio-

nes específicas sobre el uso o propósito de los terrenos y las obras y estructuras que habrán de permitirse. Sec. 2 del Reglamento de Planificación Núm. 4, *supra*; Introducción, 23 R.P.R. sec. 650.1640.

A su vez, el Plan de Usos de Terrenos de Puerto Rico (P.U.T.), de 30 de octubre de 1995, en su Sec. 2.02 (23 R.P.R. sec. 650.824), establece como política pública la intensificación de los usos comerciales y de servicios, tanto públicos como privados, teniendo como criterio, entre otros, requerir que los proyectos comerciales y de servicios se ubiquen en terrenos identificados y destinados para usos comerciales y de servicio. Véase 23 R.P.R. sec. 650.824(2).

## III

El ordenamiento descrito anteriormente no impide la variación de una determinación hecha en un momento dado y bajo ciertas circunstancias cuando han cambiado los factores que la produjeron. Dicho ordenamiento establece mecanismos para evitar que una reglamentación existente se convierta en un instrumento inflexible que impida amoldarse a situaciones extraordinarias. *Asoc. Res. Baldrich, Inc. v. J.P. de P.R.*, 118 D.P.R. 759, 767 (1987). Entre éstos se encuentran, sin limitarse a, las variaciones y el mecanismo de cambio de zonificación.

La variación de uso es un permiso para dedicar una propiedad a un uso prohibido por las restricciones impuestas por el Reglamento de Planificación Núm. 4 en una zona o un distrito y que sólo se concede, *vía excepción*, para evitar perjuicios a una propiedad cuando se demuestre que, debido a circunstancias extraordinarias, la aplicación estricta de esa reglamentación equivaldría a una confiscación de la propiedad. Véanse: Secs. 2.0 y 98.0 del Reglamento de Planificación Núm. 4, *supra*; *Asoc. Res. Baldrich, Inc. v. J.P. de P.R.*, supra, pág. 768; *Asoc., C.D. Octubre v. J.A.C.L.*, 116 D.P.R. 326, 332 (1985). Por ser un

mecanismo *de excepción*, las variaciones han de ser concedidas en casos realmente extraordinarios y meritorios, sujetas a requisitos de ley. *Fuertes y otros v. A.R.Pe.*, 134 D.P.R. 947 (1993). La variación debe ser solicitada por formulario al efecto por su dueño o representante autorizado (Sec. 98.01 del Reglamento de Planificación Núm. 4 (23 R.P.R. sec. 650.1745(2)); se debe establecer que ninguno de los usos permitidos en el distrito en cuestión es factible para esa propiedad desde el punto de vista físico o económico, tomando en consideración —entre otros criterios— los costos de adaptar la propiedad a los usos permitidos y los beneficios que han de ser derivados con el permiso de uso; que el *uso propuesto es compatible con los propósitos del distrito, vecindario o propiedad*. Sec. 98.05 del Reglamento de Planificación Núm. 4 (23 R.P.R. sec. 650.1745(4)). En cuanto a las variaciones de uso, es necesaria la celebración de una vista pública. Sec. 98.04 del Reglamento de Planificación Núm. 4 (23 R.P.R. sec. 650.1745(3)); *Asoc. Res. Park Side, Inc. v. J.P.*, 139 D.P.R. 349 (1995). Esta variación de uso también está limitada por la norma de la autoinflicción del daño; es decir, cuando el promovente, conociendo las limitaciones impuestas por los requisitos de zonificación, se coloca voluntariamente en una posición que le causa un perjuicio irrazonable. *Asoc. de Res. Baldrich, Inc. v. J.P. de P.R.*, supra, pág. 772; *Asoc. C.D. Octubre v. J.A.C.L.*, supra, pág. 334; *Fuertes y otros v. A.R.Pe.*, supra, pág. 959.

■ La Junta de Planificación está facultada tanto para preparar y adoptar mapas de zonificación como para considerar y atender las solicitudes de enmiendas a éstos. 23 L.P.R.A. sec. 62j(5); Sec. 4.04 del Reglamento de Planificación Núm. 4 (23 R.P.R. sec. 650.1650). Cuando ejerce esa autoridad se ha establecido que ejercita una función cuasi legislativa, ya que no adjudica una controversia sino que establece una reglamentación. 23 L.P.R.A. sec. 63d; *Luan Investment Corp. v. Román*, 125 D.P.R. 533, 546

(1990). Se podrán considerar cambios a la zonificación de determinado sector o solar, por petición de alguna persona, funcionario, organismo o a iniciativa propia de la Junta de Planificación. Sec. 4.04 del Reglamento de Planificación Núm. 4, *supra*. En el caso de autos ninguno de estos mecanismos se utilizó. La Junta de Planificación no se pronunció acerca de las condiciones necesarias para asegurar el cumplimiento de los criterios establecidos para autorizar variaciones ni especificó la naturaleza y extensión de éstas. No se estableció que ninguno de los usos permitidos en ese distrito fuesen factibles desde el punto de vista físico y económico, ni se acreditaron las circunstancias especiales y excepcionales que podrían motivar su autorización. Tampoco se utilizó el mecanismo de cambio de zonificación a pesar de que la convocatoria a vistas públicas de la Junta de Planificación fue con el propósito de considerar una enmienda a la consulta de ubicación y una propuesta enmienda al mapa de zonificación de Caguas para la reclasificación de los terrenos, que son objeto de la consulta de un Distrito R-1 a uno C-4.

## IV

Estamos ante un distrito clasificado en su mayoría como distrito residencial de baja densidad poblacional, *con una pequeña porción demarcada como industrial liviano*. Sin embargo, la Junta de Planificación autorizó en 1988, vía consulta de ubicación, la construcción del proyecto industrial liviano *como si todo el terreno tuviera esa misma clasificación*. Luego se autorizó en 1991, vía enmienda a la consulta de ubicación, la reagrupación de varios de los solares, *indicándose que serían utilizados para la construcción de proyectos enmarcados dentro de los mismos parámetros de industrial liviano*. No obstante, a pesar de que ya A.R.Pe. había denegado el permiso para el anteproyecto de la construcción de un Sam's Wholesale Club, por su uso no estar permitido en la clasificación de los solares en cues-

tión, poco después la Junta de Planificación accede al permiso, vía enmienda la consulta de ubicación, para establecer un negocio Wal-Mart de comercio al detal.

Cuando Wal-Mart compra los terrenos en 1991 *sabía* que estaban clasificados como Distrito I-1, autorizados para un proyecto industrial liviano. Wal-Mart se expuso a una situación en la cual se autoinfligió el perjuicio. Aunque surge de los autos que A.R.Pe. había cursado comunicación al proponente en la que se establecía que un negocio de ventas al por mayor estaba permitido en un distrito industrial liviano, razón por la cual aserta Wal-Mart que compró el mencionado terreno, no es menos cierto que el proyecto propuesto es de ventas al detal, el cual no está permitido en dicho distrito.

La *"consulta de ubicación"* es el vehículo administrativo procesal para que la Junta de Planificación evalúe, pase juicio y tome la determinación que estime pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas, pero que las disposiciones reglamentarias proveen para que se consideren. *Misión Ind. P.R. v. J.P.,* 146 D.P.R. 64 (1998). Esta consulta se identifica como pública o privada dependiendo de quien la origine, e incluye los proyectos de desarrollo extenso que han de considerarse según las disposiciones de las Secs. 95.00, 96.00 y 97.00 del Reglamento de Planificación Núm. 4 (23 R.P.R. sec. 650.1744) y Sec. 2.00 del citado Reglamento, *supra* (Definiciones). En el ejercicio de esta facultad, la Junta de Planificación tiene gran discreción, pero ciertamente no es un cheque en blanco, ya que está sujeta a las normas y los requisitos consignados en la ley. En el ejercicio de tal discreción, la Junta no puede obviar su propios estatutos en cuanto a los usos de terrenos.

Los factores que la Junta de Planificación tiene que considerar como elementos de juicio para estudiar, tramitar y resolver las consultas de ubicación son, entre otros,

aquellos cuya consideración dispone la Ley Orgánica de la Junta de Planificación, Ley Núm. 75, según enmendada, *supra*; la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4001 *et seq.*), según enmendada; el Plan de Desarrollo Integral, Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico, los Planes de Usos de Terrenos (incluyendo Mapas de Extensión Urbana), los Mapas de Zonificación, los Mapas de Zonas susceptibles a Inundaciones, los Planes de Ordenación Territorial adoptados por la Junta de Planificación, los Planes Regionales Adoptados por la Junta, el Reglamento de Planificación y otra reglamentación aplicable, el Programa de Inversiones de Cuatro Años, la localización específica del proyecto, los usos existentes en el sector, la situación de la infraestructura física y social del lugar, los rasgos topográficos, la condición de inundabilidad, la condición del subsuelo, la densidad poblacional, el grado de contaminación del ambiente, la distancia entre los terrenos y las áreas construidas, la importancia agrícola, ambiental o turística de los terrenos y otras condiciones sociales, económicas y físicas análogas. Sec. 7.01 del Reglamento para Procedimientos Adjudicativos de la Junta de Planificación (en adelante el Reglamento de Adjudicación), Reglamento Núm. 5244 de 31 de mayo de 1995 (23 R.P.R. sec. 650.234 (1997)).

■ La Junta de Planificación también posee la facultad de considerar enmiendas a las consultas ya aprobadas. La Sec. 7.02 del Reglamento de Adjudicación, 23 R.P.R. sec. 650.235 (1997), sobre Consideración a Enmiendas a Consultas, dispone que de surgir la necesidad de hacer cambios a un proyecto que altere la *consulta aprobada vigente*, se someterá una solicitud de enmienda que explique en detalles la naturaleza de la enmienda y la razón para ésta, así como toda la documentación pertinente y necesaria para que la Junta pueda tomar la determinación

correspondiente. La solicitud y documentación se presentará en original e igual número de copias que una consulta nueva. Dependiendo de la naturaleza y magnitud del cambio propuesto, una vez evaluado la Junta de Planificación podrá requerir la presentación de una nueva consulta y el cobro correspondiente.

Al aprobar la consulta de 2 de marzo de 1988, la Junta de Planificación estableció que se utilizarían los parámetros aplicables de un distrito de zonificación I-1; esto es, de uso industrial liviano. Cuando aprobó la primera enmienda a la consulta reafirmó que los parámetros de zonificación industrial livianos permanecían intactos.

En los distritos de zonificación I-1 sólo se permiten ministerialmente los usos industriales livianos enumerados en la subsec. 27.01 y siguientes del Reglamento de Planificación Núm.4 (23 R.P.R. sec. 650.1673); ninguno de los allí dispuestos constituyen usos comerciales como el propuesto.

 La Junta puede, sin embargo, evaluar estos proyectos que disponen un uso de terrenos no permitido ministerialmente, utilizando el mecanismo de la consulta de ubicación, independientemente del distrito donde se propongan, pero limitada por las normas y los requisitos reglamentarios.

La Resolución JP–94–255, enmienda *nunc pro tunc*, de 15 de abril de 1994, especifica la información que deben contener las consultas de ubicación para la evaluación de los proyectos comerciales. En ésta se enfatiza que el criterio principal en el proceso adjudicativo lo será *el uso de los terrenos*.

 Los proyectos de desarrollo extenso serán evaluados conforme a las disposiciones de las Secs. 95.00, 96.00 y 97.00 del Reglamento Núm. 4, *supra*, y comprende, entre otros, "el desarrollo de facilidades comerciales, industriales, institucionales, o recreativas que excedan

veinte mil (20,000) pies cuadrados de construcción o en terrenos que excedan cuatro mil (4,000) metros cuadrados".

 La citada Sec. 95 del Reglamento de Planificación Núm. 4 contiene los criterios generales que han de considerarse en los proyectos de desarrollos extensos. Se establece que la determinación que se tome sobre una propuesta de un proyecto de desarrollo extenso descansará en la evaluación de varios factores que serán presentados por la parte interesada, entre éstos, "conformidad del uso propuesto y su intensidad con el Plan de Uso de Terrenos hasta donde este haya sido adoptado o aprobado". Sec. 95.03 del Reglamento Núm. 4, *supra* (23 R.P.R. sec. 650.1744). La referida Sec. 96 delega en A.R.PE. los desarrollos extensos que cumplen con la reglamentación vigente, limitado por ciertos requisitos. Por su parte, la Sec. 97, *supra*, se refiere a desarrollos extensos evaluados por la Junta de Planificación y son *aquellos cuyos propuestos usos de terrenos no están permitidos por la reglamentación aplicable*. Se dispone en la Sec. 97.01 que se podrá someter a la Junta cualquiera de los tipos de proyectos que se indican en esta sección, solos o combinados, "independientemente del distrito en que se propongan". 23 R.P.R. sec. 650.1744. Los peticionarios han interpretado que para los proyectos de desarrollos extensos regulados por la citada Sec. 97.01 no hay que cumplir con los requisitos de la Sec. 98 y demás disposiciones reglamentarias, en vista del citado lenguaje de la regla, al efecto de que se le someterán los proyectos "independientemente del distrito en que se propongan". 23 R.P.R. sec. 650.1744. Aunque la regla faculta a la Junta de Planificación para considerar estos proyectos independientemente del distrito, *ello no exime a la Junta de Planificación de observar los procedimientos establecidos y promulgados por esa misma agencia para la consideración y aprobación de tales proyectos*. Dicha disposición ha de ser considerada en conjunto con el total del cuerpo reglamentario. La Sec. 97.03 (23 R.P.R. sec.

650.1744) establece que el uso propuesto ha de estar conforme con el "Plan de Usos de Terrenos" hasta donde éste haya sido estudiado o adoptado. La Sec. 4.01 del Reglamento de Adjudicación, 23 R.P.R. sec. 650.229, establece que, cuando una consulta conlleve la variación de las disposiciones reglamentarias vigentes, se requiere la presentación de una solicitud de variación debidamente fundamentada. Si lo que se interesa es la consideración de una excepción, deberá evidenciarse el cumplimiento de las condiciones establecidas por la Junta para ello. Véanse: 23 R.P.R. sec. 650.229 (1997); *Misión Ind. P.R. v. J.P.*, supra, pág. 119. Si la consulta conlleva un cambio de zonificación tiene que satisfacer los requisitos establecidos. Véanse: Sec. 4.06 del Reglamento de Planificación Núm. 4, *supra*; *Montoto v. Lorie*, supra. La Sec. 4.01 del Reglamento de Adjudicación, *supra*, exige cumplir con los requisitos vigentes para cada consulta al momento de su presentación.

En el caso de autos no ha sido estudiado ni adoptado un plan de uso para la región por lo que rige el Plan de Usos de Terrenos de Puerto Rico, el cual persigue desarrollar industrias en lugares demarcados para esos fines, por estar estratégicamente ubicados por sus características y por los servicios con que cuentan. El uso propuesto en este caso no armoniza con el permiso concedido originalmente para el uso de los terrenos, toda vez que desde 1988 éstos fueron dispuestos para uso industrial.

## V

Por otro lado, la aprobación de una consulta por la Junta de Planificación tiene una vigencia de *doce (12) meses* a partir de su fecha de notificación, si se trata de una consulta privada como en este caso, período que podrá ser modificado en beneficio del interés público, previa determinación de la Junta. Luego de autorizada y de advenir final y firme, el proponente deberá presentar el proyecto ante

A.R.Pᴇ. para la próxima etapa correspondiente, dentro de la vigencia de la consulta. Una vez presentado, corresponde a A.R.Pᴇ. solicitar toda la información necesaria para la aprobación de la referida etapa, independientemente que el término establecido por la Junta haya expirado, ya que A.R.Pᴇ. está facultada para continuar el proceso ante su consideración hasta su etapa final. De vencer la vigencia de una aprobación o un permiso de A.R.Pᴇ., en un caso que sea aprobado por la Junta de Planificación mediante consulta de ubicación, estando también vencida la vigencia de la aprobación a dicha consulta, el proponente deberá solicitar y obtener nuevamente la aprobación del proyecto *por la Junta como requisito para poder continuar con el trámite en A.R.Pᴇ.* La aprobación de enmiendas a la consulta no modificará la vigencia de la consulta original, a menos que se indique de otro modo en la resolución que apruebe la enmienda. Sec. 10.00 del Reglamento de Adjudicación, 23 R.P.R. sec. 650.238. Pero la consulta ha de estar vigente para poder ser objeto de enmienda. Sec. 7.02 del Reglamento de Adjudicación, 23 R.P.R. sec. 650.234.

El 9 de febrero de 1995, Wal-Mart solicitó ante A.R.Pᴇ. una prórroga de un año al permiso de urbanización Núm. 91-46-F-869-KPCU, expedido el 20 de febrero de 1992 por un término de tres (3) años. El permiso prorrogado consistía en una urbanización industrial en un predio de terreno con cabida de 28.6446 cuerdas que sería segregado en ocho (8) lotes con cabidas entre 3,095 y 57,539 metros cuadrados. La prórroga estaba sujeta a que el proyectista sometiera una certificación indicativa de que el proyecto continuaba conforme a las leyes y los reglamentos aplicables y que, de no iniciarse la construcción de las obras dentro del período de un año, el caso quedaría archivado. El lenguaje del mencionado permiso indica que la prórroga se concedió a los fines del proyecto industrial que se había aprobado mediante enmienda a la consulta de ubicación de 8 de marzo de 1991. El 6 de diciembre de 1995, la Junta

autorizó, mediante enmienda a la consulta original, el mencionado proyecto comercial Wal-Mart. Esa enmienda no fue efectiva dado que la consulta de ubicación no estaba vigente. El estatuto claramente indica que la vigencia de la consulta de ubicación es de un año, a menos que se indique de otro modo, *y que la aprobación de enmiendas a una consulta de ubicación no modificará la vigencia de la consulta.* En ninguna de las enmiendas se alteró la vigencia de la consulta original que databa de 1988. A.R.Pe. estaba facultada para continuar el proceso hasta su etapa final, pero éste se refería a un proyecto industrial y a ningún otro.

Por este otro motivo y la naturaleza y magnitud de los cambios propuestos a la consulta original, de haber estado la misma vigente se requería la presentación de una nueva consulta.

No erró, por lo tanto, el Tribunal de Circuito de Apelaciones al así concluirlo.

## VI

Dicho foro concluyó, además, que el proyecto propuesto habría de afectar significativamente el ambiente por lo que no era suficiente la Declaración de Impacto Ambiental no Significativa (D.I.A.-N) emitida por la Junta de Planificación y avalada por la Junta de Calidad Ambiental. Concluyó, además, que era necesario la preparación de una D.I.A., lo cual presupone un estudio ambiental más específico y abarcador.

La Ley Núm. 9 de 18 de junio de 1970, según enmendada, mejor conocida como la Ley sobre Política Pública Ambiental, 12 L.P.R.A. sec. 1121 *et seq.*, se creó en consonancia con el mandato constitucional de la más eficaz conservación, desarrollo y aprovechamiento de los recursos naturales. Véase el Art. VI, Sec. 19 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. El

legislador le impuso a la Junta de Calidad Ambiental la responsabilidad de implantar las disposiciones de esta ley y de fiscalizar su cumplimiento. Véanse: 12 L.P.R.A. sec. 1129; *Misión Ind. P.R. v. J.P.*, supra; *García Oyola v. J.C.A.*, 142 D.P.R. 532 (1997).

El Art. 4(c) de la Ley sobre Política Pública Ambiental, 12 L.P.R.A. sec. 1124, establece que toda agencia o instrumentalidad gubernamental que proponga una actividad tiene que determinar, antes de realizarla, si su acción o decisión afectará significativamente la calidad del medio ambiente. Si la agencia proponente determina inicialmente, de acuerdo con parámetros establecidos, que la actividad no tendrá un impacto ambiental significativo, deberá preparar una D.I.A.-N. Esto es un documento contentivo de un análisis ambiental que señala las razones por las cuales se determina o apoya una determinación de que la acción propuesta no afectará significativamente el ambiente, y de comentarios y endosos de cualquier otra agencia que haya evaluado la acción propuesta. Secs. 2.1(k) y 4.2 del Reglamento sobre Declaración de Impacto Ambiental de la Junta de Planificación (en adelante Reglamento DIA), Reglamento Núm. 3106 de 1ro de junio de 1984, págs. 6 y 14–15. La Junta de Calidad Ambiental emitirá sus comentarios y determinará si el contenido de la declaración no significativa es adecuado en términos de cumplir con el espíritu y la letra del Art. 4(c) de la Ley sobre Política Pública Ambiental, *supra*. En sus comentarios podrá imponer las medidas de protección al ambiente que estime necesarias y razonables. Secs. 4.3.2, 4.3.3 y 4.3.4 del Reglamento D.I.A., págs. 15–16.

Por otro lado, la Junta de Calidad Ambiental tiene facultad —cuando así lo determine— para requerirle a la agencia proponente la preparación y emisión de una D.I.A., que es un proceso que analiza una propuesta acción gubernamental desde el punto de vista de su efecto sobre el ambiente y los riesgos a la salud pública, según dispuesto

por la Ley de Política Pública Ambiental, y que culmina con un documento de viabilidad ambiental, Sec. 2.1(h) del Reglamento D.I.A., pág. 6. Este documento es más extenso y abarcador que el D.I.A.-N. Véase Secs. 5.0–5.5.7.2 del Reglamento D.I.A., págs. 16–28.

Surge de la totalidad del expediente que la Junta de Planificación evaluó el proyecto desde el punto de vista ambiental y determinó que éste no causaría un impacto ambiental adverso siempre y cuando se cumpliesen con las recomendaciones establecidas en la resolución de 6 de diciembre de 1995. La Junta de Calidad Ambiental, por su parte, evaluó el referido documento y la información sometida (²) y, en comunicación de 2 de agosto de 1995, declaró haber analizado el documento ambiental sometido y determinó que la Junta de Planificación había cumplido con la fase de evaluar el posible impacto ambiental de la acción propuesta de acuerdo con la Ley sobre Política Pública Ambiental, concluyendo que se había cumplido con la reglamentación ambiental aplicable al efecto. En dicha comunicación, la Junta emitió unas recomendaciones para la etapa de construcción y operación del proyecto, de lo cual se observa que el documento fue debidamente estudiado por la entidad ambiental. El expediente ante nos contiene evidencia sustancial para sostener la determinación de la Junta, órgano administrativo especializado. No es irrazonable la determinación a la que llegaron las agencias concernidas. Erró el Tribunal de Circuito de Apelaciones al requerir una D.I.A.

No obstante, de someter una nueva consulta de ubica-

---

(²) Los endosos de las agencias gubernamentales concernidas (Departamento de Recursos Naturales, Autoridad de Carreteras, Autoridad de Energía Eléctrica y Autoridad de Acueductos y Alcantarillados) fueron actualizados en 1995 a base del análisis de la tienda Wal-Mart, un estudio hidrológico-hidráulico preparado en diciembre de 1988 por el Ing. Herminio Álamo Morales para el proyecto original Halais Industrial Park, el permiso Núm. 89LP50105 de 25 de octubre de 1989 del Cuerpo de Ingenieros de Estados Unidos y una carta de 29 de marzo de 1995 de dicha entidad, en la cual se extendía la vigencia del referido permiso para la canalización de la quebrada localizada en el predio.

ción a tenor con nuestros pronunciamientos de hoy, competerá a las agencias gubernamentales concernidas la evaluación de los posibles cambios ocurridos en el área y actuar conforme a éstos.

Por los fundamentos antes expuestos, *se dictará sentencia para modificar la sentencia del Tribunal de Circuito de Apelaciones, a los fines de dejar sin efecto aquella parte de ésta que exige la preparación y presentación de una Declaración de Impacto Ambiental (D.I.A.), y así modificada, se confirmará en todas sus partes.*

El Juez Asociado Señor Negrón García concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López se inhibió.