# 2004 DTA 107

### TRIBUNAL DE CIRCUITO DE APELACIONES
### REGIÓN JUDICIAL DE PONCE

CENTRO UNIDO DE DETALLISTAS DE PUERTO RICO
Recurrente

v.

JUNTA DE PLANIFICACIÓN
Recurrida

PLAZA SANTA ISABEL, INC. P/C ING. GERMÁN TORRES.
Proponente

TODO A PESO, INC. Y P.D.C.M. ASSOCIATES, S. E.; A. CORDERO BADILLO, INC.; MIL, INC. Y PONCE CASH & CARRY; HIGHWAY PHARMACY, INC.
Interventores-Opositores

Núm. KLRA-04-00269

San Juan, Puerto Rico, a 12 de mayo de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez,
y los Jueces Hernández Torres y Martínez Torres

Hernández Torres, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Comparece ante nos el Centro Unido de Detallistas (en adelante la parte peticionaria) y nos solicita la revisión de una resolución emitida por la Junta de Planificación de Puerto Rico (JP), el 5 de diciembre de 2003, notificada y archivada en autos el 15 de enero de 2004. En dicha resolución, la Junta de Planificación de Puerto Rico autorizó una enmienda a la consulta de ubicación número 98-67-0717-JPU para la ubicación de un proyecto comercial en el Barrio Jauca II del Municipio de Santa Isabel.

Una vez evaluado el presente recurso, se acoge como *certiorari* al amparo de los Artículos 4.0006 (C) y 9.004 de la Ley Núm. 201 de 22 de agosto de 2003, mejor conocida como la *"Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003"*.

Examinado el expediente ante nuestra consideración así como el derecho aplicable, se **DENIEGA** la expedición del auto de *certiorari*, así como la *"Moción en Auxilio de Jurisdicción"*.

### I

El 24 de julio de 1998, D'Allessio Construction, Inc., por conducto del Ingeniero Germán Torres (en adelante proponente), sometió ante la consideración de la Junta de Planificación de Puerto Rico, la consulta de ubicación número 98-67-0717-JPU para la construcción de un proyecto comercial en una finca con cabida de 21.08 cuerdas que radica al Norte de la carretera estatal 153, k.m. 7.3 en el Barrio Jauca II del Municipio de Santa Isabel. En el predio se propuso la construcción de un edificio comercial de 60,000 pies cuadrados para establecer un supermercado

de 31,500 pies cuadrados y una farmacia de 8,500 p/c; un edificio independiente de 20,000 p/c para ocho salas de teatro; cuatro estructuras adicionales independientes de 5,000 p/c para restaurantes de comida rápida con servicarro y banco.

El 28 de diciembre de 1998, Mil, Inc. y Ponce Cash & Carry radicaron ante la JP una solicitud de intervención y de denegatoria de la consulta de ubicación por falta de estudio de viabilidad económica y por falta de endosos del Departamento de Agricultura, del Departamento de Transportación y Obras Públicas y la Autoridad de Carreteras y Transportación.

El 10 de febrero de 1999, la JP aprobó la consulta de ubicación de referencia y autorizó la construcción de un proyecto comercial con un área total de 100,000 p/c los cuales serían distribuidos de la siguiente manera; 60,000 p/c para establecer un supermercado de 31,500 p/c, una mueblería de 20,000 p/c, otras cuatro estructuras independientes de 5,000 p/c para restaurantes de comida rápida y un banco. La resolución fue notificada y archivada en autos, el 18 de febrero de 1999.

Posteriormente, el 7 de mayo de 1999, la JP autorizó un primera enmienda a la consulta que consistió en reducir el área del supermercado de 31,500 p/c a 25,000 p/c y para solicitar que la farmacia fuera construida en una estructura independiente de 12,000 p/c y se dejara un área de 23,000 p/c en la estructura pegada al supermercado para alquiler de otros pequeños negocios.

Luego, mediante resolución de 30 de noviembre de 2000, la JP autorizó una segunda enmienda para añadir otro edificio comercial de 60,000 p/c.

Así las cosas, el 8 de marzo de 2001, la JP autorizó una tercera enmienda que consistía en cambiar el uso de los 20,000 p/c originalmente autorizados para uso de oficinas para ser utilizados para negocio de venta de piezas de autos y mecánica liviana a ser ubicado en una estructura independiente.

D'Allessio Construction, Inc., proponente, solicitó el 7 de noviembre de 2003, un cuarta enmienda al proyecto a los fines de redistribuir las áreas de las estructuras aún sin construir. Dicha solicitud fue autorizada por la JP mediante resolución de 5 de diciembre de 2003, notificada y archivada en autos el 15 de enero de 2004.

El 26 de enero de 2004, la farmacia Highway Pharmacy, ubicada a unos trescientos metros del proyecto propuesto, radicó escrito en oposición a la consulta de epígrafe.

El 4 de febrero de 2004, Todo a Peso, Inc. y P.D.C.M. Associates, S.E. solicitaron intervención y radicaron también una reconsideración. Ese mismo día, el Centro Unido de Detallistas, aquí peticionario, radicó ante la JP un moción de reconsideración, intervención, oposición y desestimación. Así también, A. Cordero Badillo, Inc.; Mil, Inc. y Ponce Cash & Carry radicaron moción de reconsideración, intervención, oposición, revocación y desestimación de la consulta de ubicación.

En su reunión de 13 y 18 de febrero de 2004, la JP, en resolución notificada y archivada en autos el 24 de marzo de 2004, declaró no ha lugar los argumentos de los interventores y se reafirmó en su acuerdo de 5 de diciembre de 2003.

Inconforme con la determinación, la parte peticionaria, Centro Unido de Detallistas, acude ante nos mediante recurso de revisión judicial, imputándole a la Junta de Planificación de Puerto Rico la comisión de los siguientes errores:

*"(1) Erró la Junta de Planificación al aprobar la consulta da ubicación en violación a la Ley Núm. 91 de 24 de junio de 1998.*

*(2) Erró la Junta de Planificación al aprobar la consulta de ubicación a base de un expediente incompleto y en violación al Reglamento de Procedimientos Adjudicativos de la Junta de Planificación.*

*(3) Erró la Junta de Planificación al aprobar la consulta de ubicación en incumplimiento con la Regla 252 del Reglamento de la Junta de Calidad Ambiental para el Proceso de Presentación, Evaluación y Trámite de Documentos Ambientales."*

El 12 de mayo de 2004, la parte interventora-recurrente, Centro Unido de Detallistas de Puerto Rico, presentó ante nos "*Moción en Auxilio de Jurisdicción*".

Luego de estudiar el expediente y el derecho aplicable, se deniega el auto de *certiorari*.

## II

### A

La Sección 4.1 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2171, permite que se solicite al Tribunal de Apelaciones la revisión de decisiones administrativas. Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones administrativas en vista de la vasta experiencia y conocimiento especializado de la agencia. *Socorro Rebollo v. Yiyi Motors,* Opinión de 13 de enero de 2004, **2004 J.T.S. 4**, a la pág. 501; *Pacheco Torres v. Estancias de Yauco, S.E.,* Opinión de 30 de septiembre de 2003, **2003 J.T.S. 150**, a la pág. 210; *T. Jac, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70 (1999); *Agosto v. Fondo del Seguro del Estado*, 132 D.P.R. 866, 879 (1993). Por lo tanto, la persona que alegue lo contrario tendrá que presentar evidencia suficiente para derrotar tal presunción, no pudiendo descansar únicamente en meras alegaciones. *Pacheco Torres v. Estancias de Yauco, S.E., supra*, a las págs. 210-211.

La revisión judicial es limitada. Sólo determina si la actuación administrativa fue una razonable y cónsona con el propósito legislativo o si por el contrario fue irrazonable, ilegal o medió abuso de discreción. *Mun. de San Juan v. J.C.A,* 149 D.P.R. 263 (1999); *Com. Vec. Pro-Mej., Inc. v. J. P.,* 147 D.P.R. 750 (1999); *Fuertes y otros v. A.R.P.E.,* 134 D.P.R. 947, 953 (1993).

Es norma reiterada que los procedimientos y decisiones administrativas tienen una presunción de regularidad y corrección que debe refutar quien las impugna, sin descansar en meras alegaciones. *Socorro Rebollo v. Yiyi Motors, supra; Pacheco Torres v. Estancias de Yauco, S.E., supra,* a las págs. 210-211; *Com. Vec. Pro-Mej. Inc. v. J.P., supra.* Sin embargo, las cuestiones de derecho, contrario a las de hechos, que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia, son revisables en toda su extensión. Véanse: *Pacheco Torres v. Estancias de Yauco, S.E., supra,* a la pág. 211; *San Antonio Maritime v. Puerto Rican Cement,* Opinión de 19 de febrero de 2001, **2001 J.T.S. 20**, pág. 860. Si las conclusiones de derecho de un foro administrativo están sujetas al mandato de la ley, los tribunales debemos sostenerlas. *Misión Ind P.R. v. J.P.,* 146 D.P.R. 64 (1998), a la pág. 133. Es por esta razón que los tribunales debemos ser cautelosos al intervenir con dichas determinaciones. *Viajes Gallardo v. Homero Clavell,* 131 D.P. R. 275, 290 (1992). Aun en los casos dudosos, cuando la interpretación de la agencia no sea la única razonable, la actuación del organismo administrativo merece deferencia sustancial. Véase: *De Jesús v. Departamento de Servicios Sociales,* 123 D.P.R. 407, 418 (1989); *Asociación Médica de Puerto Rico v. Cruz Azul,* 118 D.P.R. 669, 678 (1987).

Con respecto a este particular, el Tribunal Supremo ha expresado que *"[n]o empece esta deferencia, la interpretación de la agencia no merece deferencia si la misma afecta derechos fundamentales, resultare irrazonable, o conduce a la comisión de una injusticia". Costa, Piovanetti v. Caguas Expressway,* Opinión de 29 de diciembre de 1999, **2000 J.T.S. 11**, pág. 489. Por otro lado, la interpretación de una agencia

administrativa tampoco podrá prevalecer y sostenerse cuando la misma produce resultados inconsistentes con o contrarios al propósito del estatuto interpretado. *Id.*; *Calderón v. Adm. Sistemas de Retiro*, 129 D.P.R. 1020, 1042 (1992). Además, se ha sostenido que los tribunales revisores podrán intervenir con una determinación administrativa, si la misma fue *"irrazonable, ilegal o si medió abuso de discreción"*. *T. Jac, Inc. v. Caguas Centrum Limited*, Opinión de 12 de abril de 1999, **99 J.T.S. 60**, pág. 886. Véase además: *Agosto v. Fondo del Seguro del Estado, supra.*

El criterio rector para los tribunales será la razonabilidad en la actuación de la agencia recurrida. Así pues, al realizar su función revisora, el tribunal está compelido a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuviera ante sí. Por tanto, en el descargo de su función deberá caracterizar entre asuntos de discernimiento estatuario o cuestiones de especialización administrativa. La deferencia reconocida no equivale a una renuncia de la función revisora del Tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley.

*Socorro Rebollo v. Yiyi Motors, supra*, a las págs. 501-502; *Reyes Salcedo v. Policía de P.R.*, 143 D.P.R. 85 (1987).

**B**

La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. 2175, establece que *"[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo"*. Véase: *Misión Ind. P.R. v. J.P., supra*, a la pág. 131; *Metropolitana S.E. v. A.R.P.E.*, ·138 D.P.R. 200, ·213 (1995). Las decisiones administrativas tienen a su favor la presunción de legalidad y corrección. *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692 (1975), a la pág. 699. Esta presunción de regularidad y corrección *"debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla"*. *Henríquez v. Consejo de Educación Superior*, 120 D.P.R. 194, 210 (1987). Esta disposición recoge estatutariamente la norma jurisprudencial que establece que, de ordinario, los tribunales no deben intervenir con las determinaciones de hechos de un organismo administrativo si éstas se apoyan en prueba suficiente que surja del expediente considerado en su totalidad. *Misión Ind. P.R. v. J.P., supra; Metropolitana S.E. v. A.R.P.E., supra; Fac. C. Soc. Aplicadas Inc. v. C.E.S.*, 133 D.P.R. 521, 532-533 (1993).

La evidencia sustancial, según ha sido definida *"es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión"*. *Misión Ind. P.R. v. J.P., supra; Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953). Por ello, la parte afectada por una determinación de hecho de una agencia debe, en primer lugar, *"demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración"*. *Ramírez v. Depto. de Salud*, 147 D.P.R.· 901, 905 (1999); *Misión Ind. P.R. v. J.P., supra*. Si la parte afectada no demuestra la existencia de otra prueba, las determinaciones de hechos de una agencia deben ser sostenidas por el tribunal revisor. *Ramírez Rivera v. Depto. de Salud, supra*. Esto persigue evitar que los tribunales sustituyan el criterio de la agencia por el suyo propio.

Se debe mantener presente que las determinaciones de hechos de los organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarlas. *Rivera Concepción v. ARPE*, Opinión de 29 de septiembre de 2000, **2000 J.T.S. 155**, a la pág. 160; *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194, 210 (1987).

**C**

La Ley Núm. 91 de 24 de junio de 1998, según enmendada, 23 LPRA. sec. 62c, mejor conocida como la Ley Orgánica de la Junta de Planificación de Puerto Rico, creó dicha Junta con el propósito de guiar el

desarrollo integral de Puerto Rico de modo coordinado y con el fin de fomentar la salud, seguridad, orden, convivencia y el bienestar de los actuales y futuros habitantes de nuestro país. Así, faculta a la Junta para controlar el uso y desarrollo de los terrenos en Puerto Rico tanto en áreas urbanas como rurales.

La consulta de ubicación es el instrumento mediante el cual la Junta autoriza el uso particular de un terreno. Este procedimiento está gobernado específicamente por la Ley Orgánica de la Junta de Planificación, Ley Núm. 75 de 24 de junio de 1975, arts. 1-39, según enmendada, 23 L.P.R.A. sec. 62-63j, y el Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 5244 de 31 de mayo de 1995, 23 R.P.R. sec. 650.221-650.243 (1997) (en lo sucesivo, el *"Reglamento para Procedimientos Adjudicativos"*). El inciso (6) de la sección 2.00 del Reglamento para Procedimientos Adjudicativos define genéricamente *"consulta de ubicación"* como el *"[t]rámite mediante el cual la Junta de Planificación evalúa y decide[,] según estime pertinente, sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas[,] pero que por las disposiciones reglamentarias proveen para que se consideren".* 23 R.P.R. § 650.225(6) (1997). En áreas no zonificadas, la consulta incluye *"propuestos usos de terrenos que por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social pudiesen afectar significativamente el desarrollo de un sector".* *Id.* Una consulta se identifica como pública o privada, dependiendo de quién la origine, véase *id.,* o como especial o de transacción, dependiendo de las implicaciones particulares del uso propuesto. Véase *id.,* §§ 650.225(7), 650.227, 650.232.

En el Artículo 16 (1)(a) de la Ley de la Junta de Planificación se establece que:

*"En los casos en que se apruebe la consulta de ubicación para la construcción de un centro comercial de cien mil o más pies cuadrados de área neta de venta por la Junta de Planificación, dicha aprobación tendrá una vigencia de treinta meses, a partir de la notificación de la aprobación de la consulta de ubicación por la Junta de Planificación, dentro de cuyo término el centro comercial deberá estar en real y efectiva construcción. Se entenderá por real y efectiva construcción el inicio de las obras de urbanización y construcción permanentes de una estructura sobre el terreno, es decir, cualquier obra que vaya más allá de la etapa de excavación, conforme definido en el Reglamento de Procedimientos Adjudicativos de la Junta de Planificación. Una vez transcurrido el término de treinta meses antes mencionado, sin que el centro comercial se encuentre en real y efectiva construcción, la aprobación correspondiente perderá vigencia. La Junta no aprobará prórroga o reapertura alguna que se presente a los fines de solicitar una extensión al término de vigencia de la consulta de ubicación aprobada. La caducidad del término de vigencia de la aprobación de una consulta de ubicación para la construcción de un centro comercial, no será obstáculo para que posteriormente se pueda presentar ante la Junta una solicitud como un caso nuevo."*

La sección 7.01 del Reglamento para Procedimientos Adjudicativos establece, en la parte pertinente, que:

*"La Junta de Planificación estudiará, tramitará y resolverá las consultas de ubicación tomando en consideración, entre otros, los siguientes documentos y elementos de juicio: Ley Orgánica de la Junta de Planificación..., Ley de Municipios Autónomos..., Plan de Desarrollo Integral..., Objetivos y Políticas del Plan de Usos de Terrenos de Puerto Rico..., Planes de Usos de Terrenos de Puerto Rico..., Mapas de Zonificación..., Mapas de Zonas Susceptibles a Inundaciones..., Planes de Ordenación Territorial..., Planes Regionales adoptados por la Junta, Reglamentos de Planificación y otra reglamentación aplicable, Programa de Inversiones de Cuatro Años, localización específica del proyecto, usos existentes en el sector, situación de la infraestructura física y social en el lugar..., rasgos topográficos, condición de inundabilidad, condición del subsuelo, densidad poblacional, grado de contaminación del ambiente, distancia entre los terrenos y las áreas construidas, importancia agrícola, ambiental o turística de los terrenos, y otras condiciones sociales, económicas y físicas análogas.*

*Además de lo anterior, en las consultas públicas se tomará en consideración, entre otros, el costo del*

*proyecto, la disponibilidad y procedencia de fondos, programación de la obra, posibles conflictos con obras de otros organismos gubernamentales. Si se tratare de una transacción, también considerará la necesidad de la misma, si la propiedad fue ofrecida a otros organismos gubernamentales, conveniencia de que la propiedad pase de pública a privada, y otras leyes aplicables al tipo de transacción.*

*La aprobación de una consulta pública no implica en forma alguna la aprobación del proyecto de transacción o de construcción en sí, el cual deberá regirse por lo establecido en este... [Reglamento] y por cualquier resolución eximiendo de la presentación a tal proyecto de transacción o de construcción.*

*La Junta de Planificación consultará, cuando lo considere necesario, a cualesquiera de los organismos gubernamentales, comisiones locales de planificación y otras entidades públicas y privadas que de alguna manera tengan relación con los proyectos bajo estudio....*

*Cuando la Junta lo estime necesario para el análisis de una consulta, se requerirá del proponente la información adicional o aclaratoria pertinente.... Esta información podrá incluir, entre otras, estudios técnicos más abarcadores, tales como, pero sin limitarse a, estudios hidrológicos-hidráulicos, estudios de nivel de ruido, análisis de tránsito, Evaluaciones Ambientales (EA) y Declaraciones de Impacto Ambiental (DIA)....*

*La Junta podrá ordenar la celebración de vistas administrativas a iniciativa propia o a petición de partes, o vistas públicas en cualquier caso en que entienda que merecen seguir ese procedimiento cuando así lo establezca la reglamentación o legislación vigente. 23 R.P.R. sec. 650.234 (1997).*

*Si fuera necesario hacer cambios al proyecto que alteren la consulta según fue aprobada, la parte proponente debe presentar una solicitud de enmienda debidamente fundamentada y documentada. La Junta podrá exigir la radicación de una nueva consulta dependiendo de la naturaleza y magnitud de los cambios propuestos en relación con la consulta original. La radicación de una solicitud de enmienda antes de que la Junta resuelva la consulta original pudiera tener el efecto de reiniciar cualquier trámite interagencial. Reglamento para Procedimientos Adjudicativos, sec. 7.02, 23 R.P.R. sec. 650.235 (1997)."*

### III

La parte aquí peticionaria, Centro Unido de Detallistas, alega que erró la Junta de Planificación de Puerto Rico al aprobar la consulta de ubicación en violación a la Ley Orgánica de Junta de Planificación, al Reglamento para Procedimientos Adjudicativos de la Junta, al Reglamento de la Junta de Calidad Ambiental para el Proceso de Presentación, Evaluación y Trámite de Documentos Ambientales y basado en un expediente incompleto.

No le asiste la razón. Veamos porqué.

El aquí peticionario, Centro Unido de Detallistas, señala que erró la JP al aprobar la consulta de ubicación núm. 1998-67-0717-JPU por la misma violar la Ley Orgánica de dicha agencia. Del texto de la Ley surge claramente que la prohibición establecida recae sobre la prórroga o reapertura presentada a los fines de solicitar la extensión al término de vigencia de la consulta de ubicación. Las enmiendas solicitadas por la parte proponente, D'Allessio Construction, Inc., fueron sobre la distribución o utilización de las facilidades aprobadas mediante dicha consulta, por lo cual, en ninguna de las solicitudes de enmienda se requirió prórroga o reapertura con el fin de solicitar la extensión del término de vigencia de la consulta. En ninguna disposición de la Ley de Planificación o del Reglamento para Procedimientos Adjudicativos se dice que el término comenzará a contar o será de aplicación a la consulta original, por lo cual es perfectamente válido considerar que cada vez que la JP autoriza mediante una resolución un cambio o variación a la consulta originalmente sometida, el término de treinta meses para que esa nueva obra se encuentre en real y efectiva construcción comienza a decursar a partir de dicho dictamen. Consta en la resolución de la JP que para noviembre de 2000, el proyecto

original se encontraba en construcción, por lo que resulta incorrecta la apreciación de la parte peticionaria al señalar que el término de vigencia de la consulta venció en agosto de 2001 y que ha esa fecha no había comenzado la real y efectiva construcción.

Además, de la propia solicitud para la cuarta enmienda surge que al 7 de noviembre de 2003, ya el proyecto estaba en real y efectiva construcción, porque contaba con 60,000 p/c construidos. Resulta forzoso concluir que las enmiendas solicitadas no fueron interpuestas con el fin de extender términos de vigencia, por lo cual no se cometió el error alegado y la JP tenía jurisdicción para entender en la enmienda propuesta. No coincidimos en la interpretación de la normativa que hace el interventor-peticionario en su alegato al señalar que la aplicación correcta de la disposición exige que, para cualquier enmienda a la consulta de ubicación, se utilice el mecanismo de una nueva consulta, ello en contravención con la sección 7.02, del Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, la cual concede la facultad discrecional a la JP para determinar si la enmienda propuesta debe ser considerada como una nueva consulta o no.

Respecto al segundo error señalado por la parte peticionaria, Centro Unido de Detallistas, el mismo no fue cometido por la JP. Surge de las resoluciones anejadas al escrito de revisión, todas las certificaciones expedidas por las agencias pertinentes, en las cuales se reconoce que la consulta de ubicación núm. 1998-67-0717-JPU cumple con los requisitos legales para recibir la permisología y los endosos necesarios para comenzar la construcción. Entre los endosos obtenidos por el proponente, está el de la Junta de Calidad Ambiental, Autoridad de Acueductos y Alcantarillados, el Municipio de Santa Isabel, Autoridad de Carreteras, Autoridad de Energía Eléctrica, Departamento de Recursos Naturales entre otros.

Es principio rector de nuestra facultad de revisión el respetar las determinaciones de las agencias administrativas. No estamos en posición de sustituir el conocimiento especializado de la Junta de Planificación, que al amparo de la sección 7.02 del Reglamento Adjudicativo consideró que la magnitud y naturaleza de los cambios propuestos en la cuarta enmienda (redistribuir las áreas de las estructuras), no requerían la radicación de una nueva consulta. La parte aquí peticionaria no ha demostrado la existencia de otra prueba que obre en el expediente administrativo que resulte evidencia sustancial para llegar a una conclusión distinta a la que llegó la JP. Por tanto, no podemos concluir que la JP basó su determinación en un expediente incompleto o en violación a alguna disposición del Reglamento de Adjudicación.

Con relación al tercer error señalado por la parte peticionaria, Centro Unido de Detallistas, el mismo no fue cometido por la JP. Entendemos que si al analizar cada una de las enmiendas propuestas y la documentación presentada la JP certificó que se cumplió con todos los requisitos exigidos por ley, dicha determinación merece toda nuestra deferencia, por lo que estamos impedidos de sustituir su criterio.

De conformidad con lo anteriormente expuesto, entendemos que no incidió el foro administrativo en los errores sobre la ejecución y cumplimiento de las leyes y reglamentos que ellos administran, así como también con lo prescrito por el Reglamento de la Junta de Calidad Ambiental. Es por ello que su determinación merece toda nuestra deferencia.

La parte aquí peticionaria, Centro Unido de Detallistas, no nos ha demostrado que exista prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, que nos permita concluir que la actuación de la agencia no fue una razonable. Por ello, entendemos que la enmienda a la consulta de ubicación aprobada por la JP debe ser sostenida por este Tribunal de Apelaciones, pues la misma no fue irrazonable, ilegal, ni medió abuso de discreción.

## IV

Por los fundamentos anteriormente expuestos, se deniega la expedición del auto de *certiorari* y la *"Moción en Auxilio de Jurisdicción",* por ser conforme a derecho la consulta de ubicación aprobada por la Junta de

Planificación de Puerto Rico.

Notificar inmediatamente por vía facsímil y correo ordinario.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General