CC-2001-60                                              1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan I. López Malavé y Otros<br><br>    Recurridos<br><br>            v.<br><br>Antonio Roig Sucesores, Inc.<br>y Otros<br><br>    Peticionarios | Certiorari<br><br>2002 TSPR 79<br><br>157 DPR _____ |

Número del Caso: CC-2001-60


Fecha: 17/junio/2002


Tribunal de Circuito de Apelaciones:
                        Circuito Regional VI


Juez Ponente:
                        Hon. Rafael Martínez
Torres

Abogadas de la Parte Peticionaria:
                        Lcda. Leonor Porrata Doria
                        Lcda. Ileana Fontánez Fuentes


Abogados de la Parte Recurrida:
                        Lcda. Belén Bazán González
                        Lcdo. Benjamín Soto Maldonado



Materia: Consulta de Ubicación




Este documento constituye un documento oficial del Tribunal
 Supremo que está sujeto a los cambios y correcciones del
 proceso  de  compilación  y  publicación  oficial  de  las
 decisiones del Tribunal. Su distribución electrónica se hace
 como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**Juan I. López Malavé y Otros**

    **Recurridos**

    **v.**

                                    **CC-2001-60**

    **Certiorari**

**Antonio Roig Sucesores,
Inc. y Otros**

    **Peticionarios**

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 17 de junio de 2002.

El recurso de autos nos brinda la oportunidad de ampliar nuestros pronunciamientos en T-Jac, Inc. v. Caguas Centrum Limited Partnership, res. el 12 de abril de 1999, 99 TSPR 54, y así precisar los requisitos con los que debe cumplir una consulta de ubicación, que conlleva un eventual cambio de zonificación, cuando el proyecto propuesto cualifica como uno de desarrollo extenso.

I

El Sr. Juan I. López Malavé, a través del arquitecto Elio S. Martínez, presentó ante la Junta de Planificación (en adelante, la Junta) una

consulta de ubicación para la construcción de un proyecto comercial de oficinas en Humacao. Este proyecto comprendía un área de construcción de 100,000 pies cuadrados y se desarrollaría en un solar con cabida superficial de 10.9 cuerdas, el cual está clasificado como Residencial Uno (R-1) según el correspondiente mapa de zonificación. Con dicha solicitud se sometió un memorial explicativo en el cual se indicaba que aunque "el predio tiene una zonificación residencial (R-1), [...] [e]l uso propuesto de oficinas se integra a los usos existentes en el área, [propiciando] un desarrollo integral del sector de forma intensa y eficiente". Igualmente, se advertía que en la colindancia del predio ya se habían aprobado consultas para el uso de oficinas.

Luego de recibir la referida consulta, la Junta procedió a requerir los comentarios de las agencias pertinentes. A tenor con dicho requerimiento, el Departamento de Recursos Naturales y Ambientales manifestó que parte del desarrollo propuesto estaba ubicado dentro de terrenos del Estado. Por ello, el Sr. López Malavé modificó posteriormente su proyecto para atender dicho señalamiento. De esta forma, redujo su cabida, ubicándolo en 5.99 cuerdas en lugar de las 10.9 cuerdas originales, para así dejar fuera la parte de terreno que dicho organismo reclamaba como propiedad del Estado.

Así las cosas, la Junta celebró vista pública para evaluar la consulta sometida, considerar la prueba y planteamientos del proponente, Sr. López Malavé, y de las partes interesadas y el público en general. Previo a la celebración de la vista, se publicó en un periódico de circulación general un "aviso de vista pública", en cuyo título se expresaba: "Sobre consulta de ubicación para un proyecto de oficinas [...] y posible enmienda al Mapa de Zonificación[.]" Igualmente, se notificó de la celebración de la vista a los vecinos

de las propiedades en un radio de cien (100) metros del predio objeto de consulta.

A dicha vista comparecieron Antonio Roig Sucesores, Inc. y Desarrollos Roig, S.E. (en adelante, los interventores), titulares de una finca colindante, a quienes se les permitió intervenir en el proceso de consulta de ubicación. En síntesis, los interventores se opusieron a la aprobación de la mencionada consulta por entender que, en vista de la clasificación del predio, el proyecto propuesto no procedía hasta tanto se concediera una variación en uso o un cambio de zonificación. De esta forma, intimaron que no se podía autorizar un proyecto que no se ajustara a la zonificación vigente hasta que primero se cambiara la zonificación del predio.

Planteada la controversia, la Junta procedió a analizar la consulta de ubicación presentada. Luego del examen de rigor, la agencia concluyó que el proyecto era uno que requería una consulta de ubicación por ser uno cuyo "uso e intensidad no son permitidos ministerialmente" y dictaminó que el mismo se tramitaría a la luz de las disposiciones reglamentarias sobre "desarrollos extensos" ya que las dimensiones de la propiedad así lo exigían. Así, tras examinar la consulta al amparo de las exigencias para los "desarrollos extensos", la Junta aprobó la misma y determinó que el proyecto cumplía con todos los requisitos aplicables.[1]

---

[1] De esta forma, la Junta indicó que: (i) la cabida excedía el máximo permitido como cambio de zonificación; (ii) el proyecto estaba conforme con las recomendaciones del Plan de Usos de Terrenos hasta donde éste había sido adoptado o estudiado; (iii) existía la infraestructura necesaria para atender las necesidades del proyecto propuesto y para mitigar sus efectos directos e indirectos y; (iv) se celebró vista pública con notificación a los dueños de las propiedades en un radio de cien (100) metros del área en que se propone el proyecto. Véase, Sección 97.03 del Reglamento de Planificación Número 4, conocido como Reglamento de Zonificación de Puerto Rico, en su edición revisada de 16 de septiembre de 1992, 23 R.P.R. sec. 650.1744(2).

En la consulta aprobada se hizo constar que se utilizarían los parámetros de diseño correspondientes a un Distrito Comercial Central Intermedio (C-2) y que se cumplirían con requisitos ambientales y reglamentarios durante la fase de construcción.

Inconforme, los interventores acudieron al Tribunal de Circuito de Apelaciones impugnando la consulta de ubicación aprobada. En esencia, señalarón que erró la Junta al aprobar la consulta en contravención a las normas sentadas en T-Jac, Inc., *supra*. Así, amparándose en ciertas expresiones del referido caso (a los efectos de establecer que cuando una "consulta conlleva un cambio de zonificación tiene que satisfacer los requisitos establecidos"), argumentaron que la consulta impugnada infringía dicha normativa pues, a su juicio, no procedía autorizar un proyecto que no se ajustara a la zonificación hasta tanto se rezonificara el predio. No obstante, el foro apelativo rechazó sus argumentos y confirmó a la Junta tras concluir que dicha agencia había aprobado la consulta de ubicación a tenor con las exigencias de T-Jac, Inc., *supra*.

De este dictamen recurren los interventores ante nos y plantean, esencialmente, los mismos argumentos. Luego de expedir el auto solicitado y examinar las comparecencias de las partes, resolvemos.

II

**Según anticipamos, la controversia que nos ocupa se circunscribe a determinar si la Junta aprobó la consulta de autos a tenor con nuestros pronunciamientos en T-Jac, Inc., *supra*. Veamos.**

La Ley Orgánica de la Junta de Planificación de Puerto Rico[2] (en adelante, Ley de Planificación) creó la Junta con el propósito general de guiar el desarrollo de Puerto Rico de modo coordinado, adecuado y económico, fomentando el bienestar general de los ciudadanos y la

eficiencia en el proceso de desarrollo, en la distribución de población, en el uso de las tierras y en las mejoras públicas. Véase, Art. 4 de la Ley de Planificación, *supra*, 23 L.P.R.A. sec. 62(c); E.L.A. v. Domínguez, 104 D.P.R. 468, 470 (1975). La referida legislación le encomendó a dicha entidad establecer Planes de Usos de Terrenos y un Plan de Desarrollo Integral, en el cual se esbozarían las políticas de desarrollo integral de la Isla. Véase, Artículos 13 y 14 de la Ley de Planificación, *supra*, 23 L.P.R.A. secs. 62(l) y 62(m).

Igualmente, la Ley de Planificación le confirió a la Junta la facultad para adoptar, aprobar y enmendar mapas de zonificación siempre y cuando se ajustara a las exigencias legales. Art. 11 de la Ley de Planificación, *supra*, 23 L.P.R.A. sec. 62(j). Entre los requisitos establecidos se dispuso que la preparación y revisión de los mapas de zonificación se haría a base de los Planes de Usos de Terreno. Véase, Art. 14 de la Ley de Planificación, *supra*, 23 L.P.R.A. sec. 62(m); Asociación de Dueños de Casas de la Parguera, Inc. v. Junta de Planificación, res. el 14 de mayo de 1999, 99 TSPR 75. De la misma forma, se estableció que cualquier enmienda a los mapas de zonificación "no introducir[ía] cambios fundamentales [...] excepto con el propósito de instrumentar las recomendaciones del Plan de Uso de Terrenos y del Plan de Desarrollo Integral de Puerto Rico". Véase, Art. 28 de la Ley de Planificación, supra, 23 L.P.R.A. sec. 63; Asociación de Dueños de Casas de la Parguera, Inc. v. Junta de Planificación, *supra*. Esto pues, toda obra o proyecto a ser realizado por cualquier persona o entidad, deberá estar de acuerdo con las recomendaciones de los Planes de Usos de Terrenos. Art. 14 de la Ley de Planificación, *supra*, 23 L.P.R.A. sec. 62(m); Asociación de Dueños de Casas de la Parguera, Inc., *supra*. Por último, como requisito de umbral para implantar la política pública

---

² Ley Núm. 75 de 24 de junio 24 de 1975, 23 L.P.R.A. sec. 62 et seq.

establecida por la Ley de Planificación de fomentar la participación de la ciudadanía en el proceso de planificación, dicha ley estableció que "[a]ntes de adoptar o enmendar, o de proponer que se adopten o enmienden [los] Mapas de Zonificación [...] la Junta celebrará vistas públicas luego de dar aviso al público[.]" Véase, Artículo Art. 27 de la Ley de Planificación, *supra*, 23 L.P.R.A. sec. 62(z).

Para la consecución de los fines esbozados en la Ley de Planificación, la Junta aprobó el Reglamento de Planificación Número 4, conocido como Reglamento de Zonificación de Puerto Rico, en su edición revisada de 16 de septiembre de 1992, 23 R.P.R. secs. 650.1638 et seq. (en adelante, Reglamento de Zonificación), el cual fue modificado recientemente mediante edición de 5 de noviembre de 2000; véase, Reglamento Núm. 6211 de la Junta de Planificación. Aunque la nueva edición retiene gran parte de las disposiciones de la versión anterior, valga aclarar que la normativa que tenemos ante nos se rige a la luz del Reglamento de Zonificación en su edición de 16 de septiembre de 1992 bajo el cual la consulta de autos fue aprobada.

**En lo que respecta a cambios de zonificación, los mismos eran regulados por las secciones 4.00-4.12 del Reglamento de Zonificación, 23 R.P.R. sec. 650.1650. A tenor con las aludidas disposiciones, la parte que interesara un cambio de zonificación debía justificar ante la Junta su solicitud de rezonificación y notificar la intención de cambiar el distrito de zonificación. Por ello, la sección 4.06(3) exigía que se radicara un memorial explicativo con "las razones que apoyan la solicitud del cambio de zonificación y el beneficio que derivaría la comunidad o el sector con respecto al mismo". 23 R.P.R. sec. 650.1650(6).**

Ahora bien, valga aclarar que dicho reglamento establecía unos tramites adicionales con los que se debía cumplir cuando la cabida de

la propiedad objeto de rezonificación excedía unos limites previamente establecidos. Expresamente, dicho reglamento precisaba:[3]

Se podrán someter cambios de zonificación para un distrito de acuerdo al tamaño máximo de la propiedad que se establece en la siguiente tabla:

| Distrito Solicitado | Tamaño Máximo de la Propiedad |
|---|---|
| R-O | 10 cuerdas |
| R-1, R-2,R-3, R-4 y R-5 | 2,000 m² |
| CO-1, CL y C-1 | 4,000 m² |
| CO-2, C-2 y C-3 | 2,000 m² |
| [...] | |

La Junta no considerará peticiones de enmienda para reclasificar predios a Distritos C-4, C-5, C-6, IL-1, IL-2, hasta tanto se construyan las facilidades que ameriten esas clasificaciones.

**Los casos de propiedades que exceden los tamaños máximos indicados en la tabla anterior se tramitarán mediante el procedimiento dispuesto en las Secciones 95.00, 96.00 y 97.00 de este Reglamento [sobre desarrollos extensos].** (Énfasis suplido).

Como puede observarse, aquellas solicitudes de cambio de zonificación sometidas por una parte, (en las que la propiedad excedía la cabida establecida por el Reglamento de Zonificación), debían cumplir con el procedimiento adicional sobre "desarrollos extensos".[4]

---

[3] Sección 4.05 del Reglamento de Zonificación, *supra*, 23 R.P.R. sec. 650.1650(5).

[4] En lo pertinente, las secciones pertinentes sobre desarrollos extensos disponían:

"95.01- La Junta o la Administración, según corresponda, podrá considerar proyectos de desarrollos extensos que requieran el desarrollo de obras de urbanización de terrenos, conforme se indica en esta Sección y en las Secciones 96.00 y 97.00. [...]

95.03- La determinación que se tome sobre un proyecto de desarrollo extenso propuesto bajo las disposiciones de esta Sección descansará en la evaluación de factores que presente y demuestre la parte interesada en el caso a base, sin limitarse a, de los siguientes factores:

1. Conformidad del uso propuesto y su intensidad con el Plan de Usos de Terrenos hasta donde éste haya sido adoptado o estudiado.

2. Disponibilidad, programación y mejoras propuestas por el proyecto a la infraestructura del sector en que ubica.

3. La forma en que el proyecto propicia el desarrollo integral del sector y mantiene o mejora las condiciones existentes.

La distinción establecida, dependiendo del tamaño de la propiedad objeto del cambio de zonificación, es de fácil comprensión y obedeció al interés, siempre vigente, de coordinar adecuadamente el desarrollo de terrenos en Puerto Rico. Así, el Reglamento de Zonificación manifestaba una inclinación por asegurar que aquellas propiedades o proyectos de envergadura, que involucrasen grandes extensiones de terreno, siguiesen un procedimiento de mayor rigor antes de que se produjera una extensa rezonificación de un área. A modo de ejemplo, la sección 4.05 establecía que la "Junta no considerará peticiones de enmienda para reclasificar predios a Distritos C-4 [sobre centros de mercadeo desarrollados] [...] <u>hasta tanto se construyan las facilidades que ameriten dicha clasificación</u>". (Énfasis suplido).

La razón para esta distinción era sencilla; el Estado quería asegurar que, cuando se pretendiera realizar un proyecto de envergadura, existiera una justificación adecuada y que se cumplieran con ciertos requisitos adicionales, entre los que se encontraba construir la facilidad según los parámetros establecidos por la Junta, incluso antes de rezonificar el área, de suerte que se asegurara el

---

4. La viabilidad, adecuacidad y conveniencia del uso propuesto. [...]

97.01- Se podrá someter a la consideración de la Junta cualquiera de los tipos de proyectos que se indican en esta Sección, solos o combinados, independientemente del distrito en que se propongan. [...]

97.03- Proyectos de Desarrollos Comerciales Extensos [...] de Acuerdo con lo Siguiente:
1. La cabida del predio excederá el máximo permitido como cambio de zonificación y cada estructura ubicará en un solar con tamaño suficiente para proveer el estacionamiento requerido.
2. El proyecto estará conforme con las recomendaciones del Plan de Usos de Terrenos hasta donde éste haya sido adoptado o estudiado.
3. Si la infraestructura necesaria para atender las necesidades del proyecto propuesto y para mitigar sus efectos directos e indirectos está disponible o puede proveerse.
4. Se celebrará vista pública con notificación a los dueños de las propiedades en un radio de cien (100) metros del área en que se

mejor uso de los terrenos y se evitaran prácticas que atentasen contra el desarrollo coordenado en la Isla. De lo contrario, de permitir que amplias zonas de la Isla se rezonificaran sin tan siquiera contar con una justificación adecuada del proyecto propuesto, o con la construcción finalizada, se hubiese creado la posibilidad de que se incurriesen en prácticas que comprometieran la planificación eficiente, como ocurriría, por ejemplo, con la especulación de terrenos.

Por ello, una vez la propiedad excedía la cabida establecida por el Reglamento de Zonificación se requería tramitar el caso a la luz de las disposiciones sobre "desarrollos extensos", exigiéndose que el proponente cumpliera con requisitos adicionales de mayor envergadura antes de que procediese el cambio de zonificación.[5] A modo de ejemplo, la sección 95 del Reglamento de Zonificación, sobre desarrollos extensos, 23 R.P.R. sec. 650.1742, requería demostrar, *inter alia*: (i) conformidad del uso propuesto y su intensidad con el Plan de Usos de Terrenos hasta donde éste haya sido adoptado o estudiado; (ii) disponibilidad, programación y mejoras propuestas por el proyecto a la infraestructura del sector en que ubica; (iii) la forma en que el proyecto propicia el desarrollo integral del sector y mantiene o mejora las condiciones existentes y; (iv) la viabilidad, adecuacidad y conveniencia del uso propuesto.

Como puede verse, para proyectos de gran escala la Junta establecía una supervisión más directa y detallada que para aquellos proyectos de rezonificación de menor impacto; formulando incluso

_____

propone el proyecto, medidos tomando los puntos más cercanos entre dicha área y cada una las referidas propiedades. [...]".
[5] A tales efectos véase, Ortiz v. Junta de Planificación, res. el 26 de septiembre de 2000, 2000 TSPR 139, donde reconocimos los distintos trámites procesales disponibles dependiendo del tamaño de la propiedad

parámetros de construcción para velar por el mejor desarrollo de los terrenos. De esta forma, en los proyectos de envergadura se postergaba el cambio de zonificación hasta tanto se satisficieran los requisitos impuestos. Por ello, una vez finalizados los tramites de rigor, la Junta permitía que la parte solicitara el cambio de zonificación sin ulterior trámite. A tales efectos, la sección 4.06 (4) del Reglamento de Zonificación, 23 R.P.R. sec. 650.1650(6), establecía:

> Cuando se trate de un uso previamente autorizado por la Junta para el cual se hubiere celebrado vista pública, notificado de la intención de cambiar el distrito de zonificación y expedido el permiso de uso, **la parte interesada podrá iniciar el procedimiento de cambio en el mapa de zonificación** sometiendo una copia del permiso de uso certificado y autorizado por la Administración de Reglamentos y Permisos como evidencia de que el mismo se construyó y se autorizó su uso conforme a las disposiciones de la consulta. **Cuando se verifique que la consulta se culminó, la Junta podrá enmendar el mapa sin necesidad de nueva vista.**(Énfasis suplido).

A la luz de T-Jac, Inc., *supra*, resulta evidente que todo proyecto que conlleve un cambio de zonificación tiene que cumplir con los requisitos aplicables para una rezonificación. Así, están sujetos a cumplir con las normas sobre cambios de zonificación tanto los cambios de zonificación "directos" (aquellos en los que una parte propiamente solicita un cambio de zonificación para un predio de su pertenencia) como los "indirectos" (aquellos en que mediante el vehículo procesal de la consulta de ubicación una parte pretende la aprobación de un proyecto que eventualmente conllevara la rezonificación del predio).

Precisamente, en T-Jac, Inc., *supra*, advertimos que el mero hecho de utilizar el mecanismo de consulta de ubicación no exime a una parte de cumplir con los requisitos de un cambio de zonificación (o una variación o excepción según sea el caso) si dicha consulta conlleva

en cuestión y afirmamos que cuando se excedían dicho tamaños sería

eventualmente una rezonificación del área. A tales efectos, afirmamos que aunque la Junta tiene gran discreción para considerar las consultas de ubicación, ciertamente no es un cheque en blanco, ya que está sujeta a las normas y requisitos consignados en la ley. En el ejercicio de tal discreción la Junta no puede obviar sus propios estatutos en cuanto a usos de terrenos. T-Jac, Inc., *supra*. De esta forma, señalamos:

> [C]uando una consulta conlleve la variación de las disposiciones reglamentarias vigentes, se requiere la presentación de una solicitud de variación debidamente fundamentada. Si lo que se interesa es la consideración de una excepción, deberá evidenciarse el cumplimiento de las condiciones establecidas por la Junta para ello. [...] Si la consulta conlleva un cambio de zonificación tiene que satisfacer los requisitos establecidos". T-Jac, Inc., *supra*.

En fin, en dicho caso precisamos que si la consulta de ubicación realmente conlleva la rezonificación de un predio (o una variación o excepción), sería necesario cumplir con los requisitos establecidos para un cambio de zonificación (o con los requisitos para una variación o excepción). No podía ser de otra manera. La Junta no puede ampararse en la figura de la consulta de ubicación para valerse de un eximente que le permita obviar los procedimientos establecidos por dicha agencia o, mas aun, por la Ley de Planificación. De otro modo, de poco servirían los requisitos legales establecidos para cada figura si la Junta a su antojo dispusiese de un mecanismo que le permitiera autorizar proyectos indiscriminadamente.

Ahora bien, el exigir que se cumplan con los requisitos de rezonificación, cuando una consulta implique tal proceder, naturalmente requiere tomar en consideración las disposiciones sobre cambios de zonificación de suerte que se siga el procedimiento aplicable. Nuestras expresiones en T-Jac, Inc., *supra*, (relativas a la necesidad de cumplir con los requisitos de rezonificación cuando

---

necesario acudir a las figura del desarrollo extenso.

una consulta conlleve tal curso de acción) de ningún modo implicaban que no se tomarían en consideración los distintos mecanismos de rezonificación existentes y que se eximiría a un proyecto de gran escala de cumplir con las disposiciones adicionales sobre desarrollos extensos. Por el contrario, las mismas intimaban que cuando una consulta conllevara la rezonificación de un predio tendría que cumplir con las exigencias aplicables para un cambio de zonificación; teniendo así presente que los parámetros que regulaban dichos cambios establecían distintos procedimientos dependiendo de la cabida de la propiedad en cuestión, remitiendo aquellos proyectos de envergadura al trámite adicional del desarrollo extenso.

A la luz de esta normativa, examinemos la controversia que tenemos antes nos.

III

Como mencionamos anteriormente, el proponente de la consulta de autos radicó la misma para que se autorizara la construcción de un proyecto comercial de oficinas en un predio clasificado como residencial. Para tales propósitos utilizó el vehículo procesal de la consulta de ubicación, justificando la adecuacidad del uso propuesto. Igualmente, sometió un memorial explicativo justificando las razones que apoyarían la zonificación que el proyecto conllevaría. Se trataba, pues, de un cambio de zonificación indirecto en tanto pretendía un uso incompatible con la zonificación del predio (la construcción de un comercio en un área zonificada como residencial).

A la luz de lo establecido en T-Jac, Inc., *supra*, y a tenor con las disposiciones del Reglamento de Zonificación aplicable, es imprescindible que si una consulta de ubicación conlleva la eventual zonificación del predio se satisfagan los requisitos para un cambio de zonificación. Ciertamente, esto fue lo que establecimos en T-Jac,

Inc., *supra*, y sobre ello no debe quedar duda. Sin embargo, no debe perderse de perspectiva que el Reglamento de Zonificación establecía distintos tipos de cambios de zonificación (dependiendo del tamaño de la propiedad en cuestión) y formulaba requisitos adicionales cuando la propiedad excedía la cabida fijada. Por ello, si bien es cierto que una consulta de ubicación que conlleve la eventual rezonificación del predio, (por no armonizar el uso propuesto con la clasificación del predio), debe cumplir con los requisitos de un cambio de zonificación, debe tenerse presente que existen distintos tipos de rezonificación según el tamaño de la propiedad, exigiéndose satisfacer requerimientos adicionales para los proyectos de envergadura (entiéndase, el trámite más riguroso de un desarrollo extenso). Así, un cambio de zonificación mediante consulta de ubicación de un proyecto de desarrollo extenso deberá cumplir con los requisitos aplicables de cambio de zonificación (notificación de la intención de cambiar el distrito de zonificación, justificación de las razones que apoyan la solicitud del cambio de zonificación, etc.) y con las exigencias adicionales para proyectos de desarrollo extenso.

Precisamente, el caso de autos trata sobre una consulta que eventualmente requeriría una rezonificación y que, por el tamaño de la propiedad, debía cumplir con las exigencias adicionales de un desarrollo extenso. No hay duda que el proponente ha justificado su proyecto a la luz de los requisitos para una rezonificación y a tenor con las exigencias para los desarrollos extensos. De los autos se desprende el cumplimiento con los requisitos para un cambio de zonificación por el proponente. En efecto, la propia Junta está consciente de este eventual cambio de zonificación pues al aprobar la consulta señaló que se establecerían los parámetros de construcción para el distrito de zonificación que requeriría el proyecto e incluso

advirtió del posible cambio de zonificación que el predio conllevaría. Mas aun, el proponente del proyecto de autos dio cumplimiento a las exigencias de la sección 4.06 del Reglamento de Zonificación, la cual requería presentar un memorial explicativo exponiendo "las razones que apoyan la solicitud del cambio de zonificación y el beneficio que derivaría la comunidad o el sector con respecto al mismo". Igualmente, a juicio de la Junta, la consulta de autos satisface las disposiciones aplicables para los desarrollos extensos. No vemos razón alguna para rechazar el criterio de la agencia.

Los interventores correctamente señalan que es necesario que una consulta satisfaga los requisitos de un cambio de zonificación cuando la misma implique tal proceder. Sin embargo, no le asiste la razón cuando sugieren que no procede aprobar una consulta hasta que no se rezonifique el predio. Tal argumentación ignora que para aquellos desarrollos de envergadura el Reglamento de Zonificación establecía unos parámetros adicionales que requerían de la Junta una supervisión directa y exhaustiva del proyecto. Así, en tales casos, hasta que no se cumplían los requisitos impuestos por la Junta, y las exigencias reglamentarias sobre desarrollos extensos, no procedía el cambio de zonificación.

La confusión de los interventores radica en que no advierten que nuestras expresiones en T-Jac, Inc., *supra*, (relativas a la necesidad de cumplir con los requisitos de rezonificación cuando una consulta conlleve un eventual cambio de zonificación) implican que habrá que atender las disposiciones sobre cambios de zonificación; disposiciones que ponen de manifiesto las distintas maneras para rezonificar un predio dependiendo del tamaño de la propiedad. Nuestra expresión en T-Jac, Inc., *supra*: "[s]i la consulta conlleva un cambio de zonificación tiene que satisfacer los requisitos establecidos", lleva

implícito que habrá que examinar los parámetros establecidos para un cambio de zonificación para así determinar con cuáles se tendrá que cumplir. Precisamente, al estudiar los mismos se advierte que en casos como el de autos las dimensiones del proyecto exigen el cumplimiento de los requisitos adicionales para desarrollos extensos. Por supuesto, esto no significa que el proponente de este tipo de consultas quedaba excusado de justificar adecuadamente el cambio de zonificación y de notificar el referido cambio. Todo lo contrario; dicha parte debía dar cumplimiento a tales requisitos y, además, a las exigencias sobre desarrollos extensos.

En conclusión, por no enfrentarnos ante desviación alguna con lo pautado en T-Jac, Inc., *supra*, en tanto en la consulta de autos se justificó y notificó el eventual cambio de zonificación, y se dio cumplimiento a los requisitos adicionales sobre desarrollos extensos, procede confirmar el dictamen del foro apelativo.

Se dictara la Sentencia correspondiente.


Federico Hernández Denton
Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**Juan I. López Malavé y Otros**

    **Recurridos**

    **v.**                              **CC–2001–60**      **Certiorari**

**Antonio Roig Sucesores, Inc.
y Otros**

    Peticionarios


SENTENCIA


San Juan, Puerto Rico, a 17 de junio de 2002.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se confirma el dictamen del Tribunal de Circuito de Apelaciones.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García no interviene. Los Jueces Asociados señor Fuster Berlingeri y señor Rivera Pérez no intervinieron.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo