Opinión de conformidad emitida por la
Jueza Asociada Se-ñora Fiol Matta.
Estoy conforme con la sentencia emitida por este Tribunal, porque entiendo que la determinación de la Junta de Planificación respecto al cumplimiento de Hal Development Corporation con la Sección 4.02(5) del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Reglamento 6031 del Departamento de Estado, 13 de octu-bre de 1999, págs. 20-21, no fue razonable y no estuvo fundamentaba en la evidencia sustancial que obra en el expediente. Por lo tanto, la determinación recurrida no amerita la deferencia que los tribunales acostumbramos otorgar a las decisiones administrativas.
f — I
Los proponentes en el caso de autos presentaron una consulta de ubicación para un proyecto extenso mixto (co-mercial-residencial) que estaría ubicado en un Distrito R-0.(1) Según se explica en la sentencia, el proyecto con- *607 siste de ciento ocho apartamentos de tres habitaciones tipo walk-up y un área comercial de ciento cincuenta y nueve mil pies cuadrados, y estaría ubicado en el municipio de Gurabo, que según el último Censo Poblacional tiene una población urbana de 19,848 personas.
El Reglamento de Procedimientos Adjudicativos, supra, establece “el proceso que se debe seguir y los elementos de juicio que la Junta debe considerar al evaluar las consultas de ubicación”. Hernández, Álvarez v. Centro Unido, 168 D.P.R. 592, 620 (2006). La Sec. 4.02 del Reglamento, supra, especifica la información que debe contener toda consulta de ubicación para instalaciones comerciales. Ésta dispone:

Toda solicitud relacionada con una consulta de ubicación para proyectos comerciales incluirá la siguiente información:

(1) Categoría del proyecto ....
(2) Descripción del proyecto ....
(3) Establecer cómo armoniza la propuesta con el Plan de Usos de Terrenos ....
(4) Establecer cómo se beneficia la ciudadanía y el pueblo de Puerto Rico con la propuesta ....

(5) Enmarcar el proyecto propuesto en el contexto de la acti-vidad comercial existente aprobada en el área de Mercado, in-cluyendo: (a) la saturación de mercado, (b) la oferta de servi-cios en el área dentro del renglón ofrecido, (c) los comercios existentes de los cascos tradicionales adyacentes y las avenidas principales comerciales. Así también, se deberá tomar en con-sideración el impacto adverso o positivo que traerá el nuevo 
*608
proyecto al área peticionada en términos comerciales o generales. También, se analizará las condiciones socio-económi-cas prevalecientes, tales como: el ingreso per capita, el desem-pleo, y otras que puedan arrojar luz sobre la viabilidad del proyecto. Todo esto, conforme a la categoría del proyecto, a la luz de las condiciones socio-económicas prevalecientes en la región.

^ (6) Capacidad de la infraestructura existente y/o propuesta. (Énfasis nuestro.) Reglamento de Procedimientos Adjudicati-ves, supra, Sec. 4.02, págs. 19-21.
En el caso de autos, Hal Development Corporation tenía la obligación de cumplir con la See. 4.02(5) del Reglamento de Procedimientos Adjudicativos, supra, al presentar la con-sulta de ubicación y la Junta de Planificación, a su vez, es-taba obligada a evaluar esta consulta a la luz de dicha sección.(2) El CUD alega, sin embargo, que Hal Development Corporation no cumplió con los requisitos del quinto inciso de la Sec. 4.02, supra, y que la Junta incidió al apro-bar la consulta de ubicación en controversia a pesar del incumplimiento. Específicamente, el CUD alega que los re-quisitos de la See. 4.02(5), supra, no se cumplen “con la mera mención escueta de aspectos socioeconómicos del área donde se servirá el proyecto como pretendieron hacer los recurridos”. Petición de certiorari, 15 de diciembre de 2000, pág. 6. Señala, además, que la See. 4.02(5) hace una enume-ración taxativa de la información que debe presentarse y que dicha información no puede ser suministrada por com-pleto en un “informe sencillo de dos o tres párrafos”, sino que requiere la presentación de un estudio económico o su equivalente. íd., pág. 9.
*609 En Hernández, Álvarez v. Centro Unido, supra, el CUD alegó, entre otras cosas, que los proponentes de una con-sulta de ubicación para desarrollar un proyecto comercial en el barrio Sabanetas de Mayagüez no habían cumplido con la See. 4.02(5) del Reglamento de Procedimientos Ad-judicativos, supra, porque presentaron un estudio de im-pacto económico defectuoso. Específicamente, el CUD ar-gumentó que en el estudio sometido no se había discutido el efecto del proyecto en la saturación del mercado, la oferta de servicios similares y en los comercios existentes en los cascos tradicionales y las avenidas comerciales prin-cipales y que, según el análisis económico del perito del CUD, el estudio sometido por el perito de los proponentes contenía datos erróneos. Id.
Resolvimos la controversia por otros fundamentos y no nos expresamos sobre la obligación de la parte proponente de presentar un estudio económico para cumplir con la ci-tada See. 4.02(5) ni sobre el carácter mandatorio o ilustra-tivo de sus incisos (a), (b) y (c). Los hechos particulares de aquel caso no requirieron que nos expresáramos sobre esa alegación. Más bien, resolvimos que la evidencia pericial presentada permitió a la Junta evaluar el proyecto pro-puesto conforme exige la See. 4.02(5), supra, y hacer una determinación fundamentada en evidencia sustancial. La controversia, por lo tanto, se limitó a evaluar la determi-nación de la Junta de otorgarle mayor peso evidenciario al informe del perito de la parte proponente. De esta manera, luego de reiterar que “en casos donde están involucradas opiniones científicas conflictivas, es a la agencia con la pe-ricia sobre la materia a quien le corresponde dirimir los conflictos en peritaje de carácter científico”, resolvimos que la determinación de la Junta se apoyó en evidencia sustancial. Hernández, Álvarez v. Centro Unido, supra, págs. 632-633.
La situación de hechos en el caso de autos es claramente distinguible del caso de Hernández. En el caso de autos no *610 se presentó estudio alguno ni se presentó evidencia sufi-ciente que nos permita otorgarle deferencia a la decisión de la Junta.
El inciso en controversia (Sección 4.02(5)) fue enmen-dado al aprobarse el Reglamento Núm. 6031. Anterior-mente sólo se requería “[e]nmarcar el proyecto propuesto en el contexto de la actividad comercial existente y apro-bada en el área de mercado, conforme a la categoría del proyecto y analizando las condiciones socio-económicas pertinentes”. Reglamento para Procedimientos Adjudicati-vos de la Junta de Planificación, Reglamento Núm. 5244 de 21 de marzo de 1995. Véase Petición de certiorari, pág. 5. El CUD alega que la nueva See. 4.02(5), supra, tuvo la intención de requerir un estudio económico y que los requi-sitos que impone la sección son “de cumplimiento estricto ... enumerados taxativamente”. Petición de certiorari, pág. 6. La Junta, sin embargo, no exigió dicho estudio pericial y sub silentio entendió que Hal Development cumplió con la disposición reglamentaria.
Los cambios que sufrió la See. 4.02(5), supra, al ser en-mendada en 1999 sin duda alguna imponen los requisitos más estrictos a la parte proponente de un proyecto comercial. Esta sección requiere que la parte proponente de la consulta de ubicación presente información específica sobre el efecto o impacto que tendría el proyecto sobre el comercio existente en el área. A ese fin, la parte propo-nente tiene que incluir información sobre: (a) la saturación del mercado; (b) la oferta de servicios en el área dentro del renglón, y (c) los comercios existentes de los cascos tradi-cionales adyacentes y las avenidas principales comerciales. Estos son requisitos mínimos, de naturaleza mandatoria, establecidos por la Junta al enmendar su reglamento de procedimientos adjudicativos. Por otro lado, la See. 4.02(5), supra, también requiere que se analicen las condiciones socioeconómicas imperantes al momento de la consulta. Sin embargo, en ese caso, el reglamento señala, a modo *611 ilustrativo, algunas de las condiciones que deben conside-rarse, entre éstas, el ingreso per cápita y la tasa de desempleo.
Aunque no hemos encontrado documentos de la Junta sobre el proceso de enmienda de la See. 4.02(5) del Regla-mento de Procedimientos Adjudicativos, supra, no hay duda de que la agencia actuó afirmativamente para en-mendar la sección, con el fin de hacerla más detallada y precisa respecto a los elementos sobre los que hay que in-formar para cumplir con el requisito general de “[e]nmarcar el proyecto propuesto en el contexto de la ac-tividad comercial existente”. Petición de certiorari, pág. 5. Robustece nuestra interpretación que al enmendar la ci-tada See. 4.02(5) la Junta adoptara la posición expresada por el CUD en una “Ponencia del Centro Unido de Deta-llistas en relación a las enmiendas propuestas al Regla-mento para Procedimientos Adjudicativos ante la Junta de Planificación”. En esta ponencia el CUD propone a la Junta las enmiendas finalmente adoptadas “de forma que no quede duda de su intención para los requisitos de una consulta de ubicación para facilidad comercial”. íd., pág. 4.(3)
Resulta claro, pues, que al solicitar la autorización de una consulta de ubicación, la parte proponente no puede limitarse a hacer alegaciones que, a la luz del expediente administrativo, resultan infundadas, sino que debe presen-tar información, datos o algún tipo de evidencia pericial que permita a la Junta de Planificación evaluar el benefi-cio que alegadamente tendrá el proyecto, según lo la See. 4.02(5) del Reglamento Núm. 6031, supra.
*612 1 — I HH HH
Las determinaciones de las agencias administrativas merecen una gran consideración y respeto debido a la ex-periencia y el conocimiento especializado que poseen con respecto a los asuntos que le son encomendados. Hernán-dez, Álvarez v. Centro Unido, supra. Además, la Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Es-tado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2175, establece que “[l]as determinaciones de hechos de las deci-siones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo”. Anteriormente hemos definido el criterio de evidencia sustancial como “ 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión’ ”. Hernández, Álvarez v. Centro Unido, supra, pág. 615. Véase Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 679, 687 (1953). El propósito principal de la doctrina de evidencia sustancial es evitar que los tribunales impongan su criterio sobre el de la agen-cia administrativa en materia especializada. Íd.
El expediente de este caso revela que la Oficial Exami-nadora ordenó al proponente, Hal Development Corporation, que cumpliera con la See. 4.02(5), supra, y concedió un término para que presentara la información allí requerida. Hal Development Corporation pretendió cum-plir con lo requerido, mediante la presentación de una “Mo-ción informativa” y una “Moción sometiendo propuestas determinaciones de hechos y conclusiones de derecho”. En estos escritos, Hal Development Corporation señaló que el proyecto propuesto sería único en el municipio de Gurabo, ya que no existía un concepto comercial análogo en el área. Además, señaló que se proponía “darle oportunidad de ob-tener áreas comerciales a los pequeños comerciantes que ubican en el Municipio” y que el proyecto sería de provecho para los residentes, porque ya no tendrían que acudir al *613 municipio de Caguas para hacer sus compras y porque re-duciría el desempleo en el municipio de Gurabo. Por úl-timo, expresó que de acuerdo con el Censo de 1990, la fuerza laboral del municipio de Gurabo era de 9,422 perso-nas y que los datos oficiales para 1999 y 2000 acreditan un aumento en la fuerza laboral del municipio. Añadió que, según los datos oficiales de la Junta de Planificación, la fuerza laboral del municipio de Gurabo al 1999 era de 12,300, de los cuales 1,340 eran desempleados, para una tasa de 10.8%. A febrero de 2000, la fuerza laboral au-mentó a 12,500, con 11,300 empleos y un desempleo de 1,190, para un 9.5%.
Los datos presentados por Hal Development Corporation resultan insuficientes para cumplir con el mandato de la Sección 4.02(5) del Reglamento de Procedimientos Adjudica-tivos, supra. El expediente claramente demuestra que Hal Development Corporation se limitó a presentar una infor-mación vaga e imprecisa sin proveer fundamentos o prueba en apoyo de ésta. Además, Hal Development Corporation no presentó evidencia relacionada con lo requerido en los inci-sos (a), (b) y (c) de la See. 4.02(5) del reglamento, supra. En el expediente no hay ningún tipo de inventario que detalle los comercios existentes en el casco del pueblo ni en las ave-nidas principales comerciales o que detalle la oferta de ser-vicios en el área. Más aún, no sabemos cuál fue el área que la Junta de Planificación evaluó para determinar el impacto de la parte comercial del proyecto. Por otro lado, del expe-diente tampoco surge otra prueba que nos permita inferir que la Junta de Planificación podía evaluar estos aspectos del proyecto sin recibir la información que requiere la sección. Debemos recordar que el expediente administrativo debe incluir, entre otras cosas, toda evidencia recibida o con-siderada y una relación de todas las materias de las que se tomó conocimiento oficial. 3 L.P.R.A. sec. 2168(d) y (e). La única información adicional que hay en el expediente res-pecto a las exigencias de la See. 4.02(5), supra, es la decía- *614 ración del Sr. Carlos Martínez, Director de Programas Fe-derales del municipio de Gurabo. Según la resolución de la Junta de Planificación, el señor Martínez indicó que había una demanda de viviendas en Gurabo y que en el municipio no había un proyecto comercial como el propuesto. También señaló que los residentes del municipio acudían mayor-mente a los centros comerciales en el pueblo de Caguas. Resolución de la Junta de Planificación de 5 de septiembre de 2000. Esta declaración tampoco resulta suficiente para determinar que la decisión de la Junta estuvo fundamen-tada en evidencia sustancial.
La información que requiere la See. 4.02(5) es vital para que la Junta de Planificación pueda evaluar de manera diligente la consulta de ubicación propuesta en el contexto de la actividad comercial existente. Debemos recordar que las agencias administrativas están obligadas a observar estric-tamente las reglas que ellas mismas promulgan y, una vez se ha adoptado una norma, la agencia administrativa debe cumplirla y aplicarla en la manera como está concebida, sir-viendo siempre a los propósitos, objetivos y política pública que la foijaron. T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999). Además, el Reglamento de Procedimientos Adjudicativos expresamente establece que una consulta de ubicación no se considerará presentada “hasta que se haya cumplido con todos los requisitos de radicación”. Regla-mento de Procedimientos Adjudicativos, supra, Sec. 4.01, pág. 19.
Cabe señalar que la Oficial Examinadora no llegó a con-clusión alguna respecto a la suficiencia de la prueba some-tida por Hal Development Corporation. En vez, expresó que “esta Honorable Junta deberá evaluar si la información so-metida sobre los datos económicos del Censo del 1990 y los datos sobre la fuerza laboral es información que suple los criterios requeridos en la sección 4.02(5) del Reglamento de Procedimientos Adjudicativos”. Informe sobre audiencia pú-blica, supra, pág. 15. La Junta de Planificación parece haber *615 entendido, sin mayor explicación, que la información pre-sentada era suficiente, dado que aprobó la consulta de ubicación. Sin embargo, a la luz de los requisitos de la ci-tada See. 4.02(5) de su propio reglamento esta determina-ción es arbitraria y no la podemos avalar según el manto de la doctrina de la deferencia.
Resolvemos que la Junta de Planificación erró al deter-minar que la información presentada por Hal Development Corporation era suficiente para cumplir con la See. 4.02(5) del Reglamento de Procedimientos Adjudicativos, supra. Esta decisión no se apoya en evidencia sustancial y, por lo tanto, no merece nuestra deferencia.
IV
Por los fundamentos antes expuestos, estoy conforme con la sentencia emitida por este Tribunal en la que revocamos la resolución recurrida y la decisión de la Junta de Planifi-cación que aprobó la Consulta de Ubicación Núm. 2000-47-0127-JPU.

 Según la Sec. 2.01 del Reglamento de Zonificación de Puerto Rico (Reglamen-to de Planificación Núm. 4 de la Junta de Planificación), Reglamento Núm. 4844, 23 R.P.R. see. 650.1648(68), un “desarrollo extenso” comprende:
"... los desarrollos residenciales para veinte (20) o más familias o solares en pueblos o áreas con una población urbana censal menor de diez mil (10,000) perso-nas; treinta (30) o más familias o solares en pueblos o áreas con una población urbana censal entre diez mil (10,000) a cuarenta mil (40,000) personas y cuarenta (40) o más familias o solares en pueblos o áreas con una población urbana censal sobre cuarenta mil (40,000) personas conforme a los resultados del último Censo Poblacional, o el desarrollo de facilidades comerciales, industriales, institucionales o *607 recreativos que excedan veinte mil (20,000) pies cuadrados de construcción o en terrenos que excedan cuatro mil (4,000) metros cuadrados.”
Además, la Sec. 4.05 del Reglamento de Zonificación, supra, 23 R.RR. see. 650. 1651, señala que en aquellos casos en los que la propiedad para la cual se solicita el cambio de zonificación exceda el tamaño máximo indicado (tamaño máximo de un Distrito R-0 es 10 cuerdas), la consulta se tramitará mediante el procedimiento dis-puesto para desarrollos extensos.
Hemos señalado que un cambio de zonificación mediante consulta de ubicación de un proyecto, que también constituya un desarrollo extenso, deberá cumplir con los requisitos aplicables de cambio de zonificación y con las exigencias adicionales para proyectos de desarrollo extenso. López v. Antonio Roig Sucrs., Inc., 157 D.P.R. 186 (2002); T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1990).
Cabe señalar que el Reglamento de Zonificación Núm. 4844 fue derogado por el Reglamento de Zonificación de Puerto Rico (Reglamento de Planificación Núm. 4) Reglamento Núm. 6211 del Departamento de Estado, 5 de noviembre de 2000. En lo pertinente, ambos reglamentos tienen disposiciones similares.

 Además, al estudiar, tramitar y resolver una consulta de ubicación, la Junta de Planificación tomará en consideración los documentos siguientes:
“...la Ley Orgánica de la Junta de Planificación de Puerto Rico; la Ley de Muni-cipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991; los planes regio-nales adoptados por la Junta; los objetivos y las políticas del Plan de Usos de Terrenos de Puerto Rico; los mapas de zonificación y de zonas susceptibles a inundaciones; los planes de usos de terrenos; los planes de ordenación territorial; los usos existentes en el sector; la situación de la infraestructura física y social en el lugar; la distancia entre los terrenos y las áreas construidas y la importancia agrícola o ambiental de los terre-nos; los rasgos topográficos; la densidad poblacional, y otras condiciones sociales, eco-nómicas y físicas análogas, entre otros”. (Escolios omitidos.) Asoc. Tulip/Monteverde v. J.P., 171 D.P.R. 863 (2007). Véase Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, supra, Sec. 7.01.

 Según el Centro Unido de Detallistas, clarificar esta sección “serviría de mejor guía para definir tanto a nivel del oficial examinador, del proponente y de los opositores para el cumplimiento de los requisitos que recoge la sección 4.02(5)”. Po-nencia del Centro Unido de Detallistas en Relación a las Enmiendas Propuestas al Reglamento para Procedimientos Adjudicativos ante la Junta de Planificación, 19 de febrero de 1999, pág. 4.