EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Centro Unido de Detallistas de Puerto Rico | Certiorari |
| --- | --- |
| Peticionario | 2007 TSPR 205 |
| v. | 172 DPR ____ |
| Junta de Planificación | |
| Recurrida | |

Número del Caso: CC-2000-1052

Fecha: 21 de noviembre de 2007

Tribunal de Apelaciones:

       Región Judicial VI Caguas/Humacao/Guayama Panel I

Juez Ponente:

       Hon. Carmen A. Pesante Martínez

Abogado de la Parte Peticionaria:

       Lcdo. Carlos M. Declet

Abogados de la Parte Recurrida:

       Lcda. Leonor Porrata-Doria
       Lcda. Ileana Fontánez Fuentes
       Lcda. Milagros E. Rijos Ramos
       Lcdo. Luis Francisco Rodríguez Bonilla

Materia: Solicitud de Revisión de Decisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Centro Unido de Detallistas de
Puerto Rico
          Peticionario

                                            *CERTIORARI*

          v.                          CC-2000-1052

    Junta de Planificación
          Recurrida


                        Sentencia

    En San Juan, Puerto Rico, a 21 de noviembre de 2007.

    El Centro Unido de Detallistas [en adelante el CUD] comparece ante este Tribunal mediante petición de *certiorari* solicitando la revocación de la resolución emitida por la Junta de Planificación el 5 de septiembre de 2000. Mediante dicha resolución, la Junta aprobó la Consulta de Ubicación 2000-47-0127-JPU para un desarrollo extenso mixto (residencial-comercial) en el Barrio Mamey del Municipio de Gurabo. Según el CUD, Hal Development Corporation no cumplió con la sección 4.02(5) del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación. El Tribunal de Apelaciones denegó el auto de revisión.

I.

El 15 de febrero de 2000, Hal Development Corporation presentó consulta de ubicación ante la Junta de Planificación para un proyecto de desarrollo extenso mixto en una finca con cabida de aproximadamente 32.00 cuerdas que radica en el Barrio Mamey en el Municipio de Gurabo (Consulta de Ubicación 2000-47-0127-JPU). Según las conclusiones de derecho de la Junta, el proyecto estaría ubicado en un Distrito R-0.[1]

El proyecto propuesto consiste de 108 apartamentos de tres habitaciones tipo "walk-up" y un área comercial de 159,000 pies cuadrados. Según la resolución emitida por la Junta de Planificación el 16 de agosto de 2000, el área comercial estaría distribuida en cuatro restaurantes de comida rápida de 3,500 pies cuadrados cada uno, un banco con 5,000 pies cuadrados, área de oficina de 19,000 pies cuadrados, una farmacia de 16,000 pies cuadrados, tiendas pequeñas para un total de 25,000 pies cuadrados, dos restaurantes de 5,000 pies cuadrados cada uno, supermercado de 50,000 pies cuadrados y salas de cine con un área de construcción de 20,000 pies cuadrados. Por otro lado, los 108 apartamentos del área residencial se distribuirán en 27 módulos de cuatro pisos cada uno.

---

[1] En las conclusiones de derecho de la resolución aprobando la consulta, la Junta señaló que los "terrenos objeto de consulta están comprendidos dentro de un Distrito (R-0), según el Mapa de Zonificación de Gurabo". Al aprobar la consulta, la Junta determinó que "[p]ara el área comercial se utilizarán parámetros de diseño conformes a un Distrito C-2 y para la parte residencial serán conformes a un Distrito R-3".

El 24 de abril de 2000 el licenciado Carlos M. Declet, en representación del CUD, presentó una "Moción de intervención y oposición". El CUD solicitó que se denegara la consulta solicitada por el impacto que el proyecto tendría en los pequeños y medianos comerciantes y que se cumpliera con la sección 4.02(5) del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación. El 26 de abril de 2000 la solicitud de intervención fue declarada con lugar.

La vista pública se celebró el 28 de abril de 2000 en la Casa Alcaldía del Municipio de Gurabo y fue presidida por Wanda Ortiz Rivera, Oficial Examinadora de la Junta de Planificación, quien contó con la asistencia técnica de la Sra. Brenda Ortiz, Analista de Planificación del Negociado de Consultas de la Junta de Planificación. Comparecieron las siguientes personas: las licenciadas Leonor Porrata-Doria e Ileana Fontánez Fuentes y el Ingeniero Roberto López Rosario como representantes de Hal Development; el Sr. Carlos Martínez, Director de Programas Federales del Municipio de Gurabo; el Sr. Pedro García como Asambleísta Municipal y el licenciado Carlos M. Declet en representación del CUD. Además, los señores José A. Rivera Rodríguez, José Ramón González y Angel D. Agosto Vélez, Presidente de la Asociación de Residentes de la Urb. Flamboyanes, Inc., comparecieron como residentes o conocedores del sector donde se ubicaría el proyecto.

En la vista pública el CUD reiteró su solicitud sobre la necesidad de que Hal Development cumpliera con los requisitos

de la sección 4.02(5) del Reglamento de Procedimientos Adjudicativos. Hal Development admitió no tener en ese momento la información necesaria para cumplir con dicho requisito. La Oficial Examinadora le concedió tiempo adicional y el 6 de junio de 2000, Hal Development presentó una "Moción informativa" y una "Moción sometiendo propuestas determinaciones de hechos y conclusiones de derecho". El CUD se opuso a lo expresado en dichas mociones por entender que "se obvió desglosar y aportar prueba sobre los requisitos propuestos en la Sección 4.02(5) del Reglamento de Procedimientos Adjudicativos". *Réplica a moción sometiendo propuestas determinaciones de hechos y conclusiones de derecho*, 20 de junio de 2000.

El 9 de agosto de 2000, la Oficial Examinadora de la Junta de Planificación emitió el "Informe sobre audiencia pública" recomendando la aprobación de la consulta de ubicación en controversia. No hizo determinación alguna en cuanto al cumplimiento de Hal Development con los requisitos de la sección 4.02(5) del Reglamento, limitándose a expresar que la Junta "deberá evaluar si la información sometida sobre los datos económicos del censo del 1990 y los datos sobre la fuerza laboral es información que suple los criterios requeridos en la Sección 4.02(5) del Reglamento de Procedimientos Adjudicativos". La Junta de Planificación aprobó la consulta de ubicación el 5 de septiembre de 2000, sin resolver nada en concreto en cuanto a esos extremos.

El CUD, sin embargo, entendió que la Junta de Planificación incidió al aprobar la consulta de ubicación. El 5 de octubre de 2000 presentó un recurso de revisión ante el entonces Tribunal de Circuito de Apelaciones. Según el CUD, Hal Development incumplió con los requisitos establecidos en la sección 4.02(5) del Reglamento de Procedimientos Adjudicativos. El 13 de noviembre de 2000 el foro apelativo intermedio denegó la expedición del auto por entender que "la Junta basó su determinación en la prueba que desfiló ante su consideración y que la misma fue suficiente para sostener la aprobación de la consulta de ubicación". El 15 de diciembre de 2000 el CUD presentó petición de *certiorari* ante este Tribunal. En esencia, el CUD alega que la Junta de Planificación erró al aprobar la consulta de ubicación en controversia sin haberse cumplido con la sección 4.02(5) del Reglamento de Procedimientos Adjudicativos.

Expedimos el auto solicitado el 9 de febrero de 2001.

II

Con el beneficio de la comparecencia de todas las partes y luego de haber evaluado detenidamente el expediente, revocamos la resolución recurrida y la decisión de la Junta de Planificación aprobando la consulta de ubicación núm. 2000-47-0127-JPU.

Lo acuerda y manda el Tribunal y certifica la secretaria de Tribunal Supremo. El Juez Asociado señor Rebollo López disiente expresando lo siguiente: "El Juez Asociado señor Rebollo López disiente por entender que es errónea la

actuación de la Mayoría al revocar la actuación del Tribunal de Apelaciones, confirmatoria la misma de la decisión de la Junta de Planificación aprobando la consulta de ubicación en controversia; ello, según el criterio del Juez Asociado señor Rebollo López, por razón de que la decisión emitida por la Junta de Planificación —agencia con conocimiento altamente especializado respecto a las controversias planteadas y cuyas determinaciones merecen gran deferencia de parte del foro judicial—fue una <u>razonable</u> a la luz de las normas de derecho pertinentes y de los hechos específicos del caso hoy ante nuestra consideración. Dicha decisión, además, encuentra apoyo sustancial en la evidencia que desfilara ante la Junta. Entiende el Juez Asociado señor Rebollo López que la Opinión de Conformidad emitida —en la cual se basa la Sentencia del Tribunal—, aun cuando niega estar exigiendo como requisito la existencia, en esta clase de situaciones, de un 'estudio económico' o de 'viabilidad económica', en realidad lo está estableciendo; ello con el obvio propósito de hacer más oneroso la aprobación de las consultas de ubicación".

Lo acuerda y manda el Tribunal y certifica la secretaria del Tribunal Supremo Interina. El Juez Asociado señor Rivera Pérez disiente uniéndose a la expresión del Juez Asociado señor Rebollo López. El Juez Asociado señor Fuster Berlingeri no intervino.

Dimarie Alicea Lozada
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Centro Unido de Detallistas de
Puerto Rico
       Peticionario

*CERTIORARI*

         v.                        CC-2000-1052

Junta de Planificación
      Recurrida

Opinión de conformidad emitida por la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 21 de noviembre de 2007.

Estoy conforme con la sentencia emitida por este Tribunal, porque entiendo que la determinación de la Junta de Planificación respecto al cumplimiento de Hal Development con la sección 4.02(5) no fue razonable y no estuvo basada en la evidencia sustancial que obra en el expediente. Por tanto, la determinación recurrida no amerita la deferencia que los tribunales acostumbramos otorgar a las decisiones administrativas.

I.

Los proponentes en el caso de autos presentaron una consulta de ubicación para un proyecto extenso mixto (comercial-residencial) que estaría ubicado en

un Distrito R-0.[2]    Según se explica en la sentencia, el proyecto consiste de 108 apartamentos de tres habitaciones tipo "walk- up" y un área comercial de 159,000 pies cuadrados, y estaría ubicado en el municipio de Gurabo, que según el último Censo Poblacional tiene una población urbana de 19,848 personas.

El Reglamento de Procedimientos Adjudicativos establece "el proceso que se debe seguir y los elementos de juicio que la Junta debe considerar al evaluar las consultas de

---

[2] Según la sección 2.01 del Reglamento de Zonificación Núm. 4844, *supra*, un "desarrollo extenso" comprende:

> los desarrollos residenciales para veinte (20) o más familias o solares en pueblos o áreas con una población urbana censal menor de diez mil (10,000) personas; treinta (30) o más familias o solares en pueblos o áreas con una población urbana censal entre diez mil (10,000) a cuarenta mil (40,000) personas y cuarenta (40) o más familias o solares en pueblos o áreas con una población urbana censal sobre cuarenta mil (40,000) personas conforme a los resultados del último Censo Poblacional, o el desarrollo de facilidades comerciales, industriales, institucionales o recreativos que excedan veinte mil (20,000) pies cuadrados de construcción o en terrenos que excedan cuatro mil (4,000) metros cuadrados.

Además, la sección 4.05 del Reglamento de Zonificación, *supra*, señala que en aquellos casos en los que la propiedad para la cual se solicita el cambio de zonificación exceda el tamaño máximo indicado (tamaño máximo de un Distrito R-0 es 10 cuerdas), la consulta se tramitará mediante el procedimiento dispuesto para desarrollos extensos.

Hemos señalado que un cambio de zonificación mediante consulta de ubicación de un proyecto que también constituya un desarrollo extenso deberá cumplir con los requisitos aplicables de cambio de zonificación y con las exigencias adicionales para proyectos de desarrollo extenso. López v. Roig, 157 D.P.R. 186 (2002); T-Jac v. Caguas Centrum, 148 D.P.R. 70 (1990).

Cabe señalar que el Reglamento de Zonificación Núm. 4844 fue derogado por el Reglamento de Zonificación Núm. 6211 de 5 de noviembre de 2000.  En lo pertinente ambos reglamentos tienen disposiciones similares.

ubicación". <u>Hernández v. Centro Unido de Detallistas</u>, res. 10 de agosto de 2006, 168 D.P.R. __; 2006 T.S.P.R. 131. La sección 4.02 del Reglamento especifica la información que debe contener toda consulta de ubicación para facilidades comerciales. Esta dispone:

> **Toda solicitud relacionada con una consulta de ubicación para proyectos comerciales incluirá la siguiente información:** (1) Categoría del proyecto… (2) Descripción del proyecto… (3) Establecer cómo armoniza la propuesta con el Plan de Usos de Terrenos… (4)Establecer cómo se beneficia la ciudadanía y el pueblo de Puerto Rico con la propuesta… **(5) Enmarcar el proyecto propuesto en el contexto de la actividad comercial existente aprobada en el área de Mercado, incluyendo: (a) la saturación de mercado, (b) la oferta de servicios en el área dentro del renglón ofrecido, (c) los comercios existentes de los cascos tradicionales adyacentes y las avenidas principales comerciales. Así también, se deberá tomar en consideración el impacto adverso o positivo que traerá el nuevo proyecto al área peticionada en términos comerciales o generales. También, se analizará las condiciones socio-económicas prevalecientes, tales como: el ingreso per capita, el desempleo, y otras que puedan arrojar luz sobre la viabilidad del proyecto. Todo esto, conforme a la categoría del proyecto, a la luz de las condiciones socio-económicas prevalecientes en la región.** (6) Capacidad de la infraestructura existente y/o propuesta. Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Núm. 6031 del 12 de noviembre de 1999, § 4.02 (énfasis nuestro).

En el caso de autos Hal Development tenía la obligación de cumplir con la sección 4.02(5) del Reglamento de Procedimientos Adjudicativos, *supra*, al presentar la consulta de ubicación y la Junta, a su vez, venía obligada a evaluar la consulta de ubicación a la luz

de dicha sección.[3] El CUD alega, sin embargo, que Hal Development no cumplió con los requisitos del quinto inciso de la sección 4.02 y que la Junta incidió al aprobar la consulta de ubicación en controversia a pesar de dicho incumplimiento. Específicamente, el CUD alega que los requisitos de la sección 4.02(5) no se cumplen "con la mera mención escueta de aspectos socioeconómicos del área donde se servirá el proyecto como pretendieron hacer los recurridos". *Petición de certiorari*, 15 de diciembre de 2000, en la pág. 6. Señala, además, que la sección 4.02(5) hace una enumeración taxativa de la información que debe presentarse y que dicha información no puede ser suministrada por completo en un "informe sencillo de dos o tres párrafos", sino que requiere la presentación de un estudio económico o su equivalente. *Id.* en la pág. 9.

---

[3] Además, al estudiar, tramitar y resolver una consulta de ubicación, la Junta de Planificación tomará en consideración los siguientes documentos:

> La Ley Orgánica de la Junta; la Ley de Municipios Autónomos; planes regionales adoptados por la Junta; los objetivos y políticas del Plan de Usos de Terrenos de Puerto Rico; los mapas de zonificación y de zonas susceptibles a inundaciones; planes de usos de terrenos; los planes de ordenación territorial; los usos existentes en el sector; la situación de la infraestructura física y social en el lugar; distancia entre los terrenos y las áreas construidas y la importancia agrícola o ambiental de los terrenos; rasgos topográficos; densidad poblacional; y otras condiciones sociales, económicas y físicas análogas, entre otros.

Asociación de Vecinos v. Junta de Planificación, res. 19 de julio de 2007, 171 D.P.R. __; 2007 T.S.P.R. 141; Reglamentos de Procedimientos Adjudicativos de la Junta de Planificación, Núm. 6031 del 12 de noviembre de 1999, § 7.01.

En Hernández v. Centro Unidos de Detallistas, *supra*, el CUD alegó, entre otras cosas, que los proponentes de una consulta de ubicación para desarrollar un proyecto comercial en el Barrio Sabanetas de Mayagüez no habían cumplido con la sección 4.02(5) del Reglamento de Procedimientos Adjudicativos porque presentaron un estudio de impacto económico defectuoso. Específicamente, el CUD argumentó que en el estudio sometido no se había discutido el efecto del proyecto en la saturación del mercado, la oferta de servicios similares y en los comercios existentes en los cascos tradicionales y avenidas comerciales principales y que, según el análisis económico del perito del CUD, el estudio sometido por el perito de los proponentes contenía datos erróneos. *Id.*

Resolvimos la controversia por otros fundamentos y no nos expresamos sobre la obligación de la parte proponente de presentar un estudio económico para cumplir con la sección 4.02(5) ni sobre el carácter mandatorio o ilustrativo de los incisos (a), (b) y (c) de dicha sección. Los hechos particulares de aquel caso no requirieron que nos expresáramos sobre esa alegación. Más bien, resolvimos que la evidencia pericial presentada permitió a la Junta evaluar el proyecto propuesto conforme exige la sección 4.02(5) y hacer una determinación basada en evidencia sustancial. La controversia, por tanto, se limitó a evaluar la determinación de la Junta de otorgarle mayor peso evidenciario al informe del perito de la parte

proponente. De esta manera, luego de reiterar que "en casos donde están envueltas opiniones científicas conflictivas, es a la agencia con el *expertise* sobre la materia a quien le corresponde dirimir los conflictos en peritaje de carácter científico", resolvimos que la determinación de la Junta se apoyó en evidencia sustancial. *Id*.

La situación de hechos en el caso de autos es claramente distinguible del caso de Hernández. En el caso de autos no se presentó estudio alguno ni se presentó evidencia suficiente que nos permita otorgarle deferencia a la decisión de la Junta.

El inciso en controversia [sección 4.02(5)] fue enmendado al aprobarse el Reglamento Núm. 6031. Anteriormente sólo se requería "[e]nmarcar el proyecto propuesto en el contexto de la actividad comercial existente y aprobada en el área de mercado, conforme a la categoría del proyecto y analizando las condiciones socio-económicas pertinentes". Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Núm. 5244 del 21 de marzo de 1995. El CUD alega que la nueva sección 4.02(5) tuvo la intención de requerir un estudio económico y que los requisitos que impone dicha sección son "de cumplimiento estricto… enumerados taxativamente". *Petición de certiorari*, *supra*. La Junta, sin embargo, no exigió dicho estudio pericial y *sub silentio* entendió que Hal Development cumplió con la disposición reglamentaria.

Los cambios que sufrió la sección 4.02(5) al ser enmendada en 1999 sin duda alguna imponen requisitos más estrictos a la parte proponente de un proyecto comercial. Dicha sección requiere que la parte proponente de la consulta de ubicación presente información específica sobre el efecto o impacto que tendría el proyecto sobre el comercio existente en el área. A ese fin, la parte proponente tiene que incluir información sobre (a) la saturación del mercado; (b) la oferta de servicios en el área dentro del renglón; y (c) los comercios existentes de los cascos tradicionales adyacentes y las avenidas principales comerciales. Estos son requisitos mínimos, de naturaleza mandatoria, establecidos por la Junta al enmendar su reglamento de procedimientos adjudicativos. Por otro lado, la sección 4.02(5) también requiere que se analicen las condiciones socio-económicas imperantes al momento de la consulta. Sin embargo, en ese caso, el reglamento señala, a modo ilustrativo, algunas de las condiciones que deben considerarse, entre éstas, el ingreso per capita y la tasa de desempleo.

Aunque no hemos encontrado documentos de la Junta sobre el proceso de enmienda de la sección 4.02(5) del Reglamento de Procedimientos Adjudicativos, no hay duda que la agencia actuó afirmativamente para enmendar la sección con el fin de hacerla más detallada y precisa respecto a los elementos sobre los que hay que informar para cumplir con el requisito general de "[e]nmarcar el

proyecto propuesto en el contexto de la actividad comercial existente". Robustece nuestra interpretación el que al enmendar la sección 4.02(5) la Junta adoptara la posición expresada por el CUD en una "Ponencia del Centro Unido de Detallistas en Relación a las Enmiendas Propuestas al Reglamento para Procedimientos Adjudicativos ante la Junta de Planificación". En esta ponencia el CUD propone a la Junta las enmiendas finalmente adoptadas "de forma que no quede duda de su intención para los requisitos de una consulta de ubicación para facilidad comercial". *Id.* en la pág. 4.[4]

Resulta claro, pues, que al solicitar la autorización de una consulta de ubicación la parte proponente no puede limitarse a hacer alegaciones que, a la luz del expediente administrativo, resultan infundadas, sino que debe presentar información, datos o algún tipo de evidencia pericial que permita a la Junta evaluar el beneficio que alegadamente tendrá el proyecto, según lo exige el inciso (5) de la sección 4.02 del Reglamento Núm. 6031.

III.

Las determinaciones de las agencias administrativas merecen gran consideración y respeto debido a la

---

[4] Según el CUD, clarificar esta sección "serviría de mejor guía para definir tanto a nivel del oficial examinador, del proponente y de los opositores para el cumplimiento de los requisitos que recoge la sección 4.02(5)". *Ponencia del Centro Unido de Detallistas en Relación a las Enmiendas Propuestas al Reglamento para Procedimientos Adjudicativos ante la Junta de Planificación*, 19 de febrero de 1999, en la pág. 4.

experiencia y conocimiento especializado que poseen con respecto a los asuntos que le son encomendados. Hernández v. Centro Unido de Detallistas, *supra*. Además, la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. § 2175, establece que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". Anteriormente hemos definido el criterio de evidencia sustancial como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hernández v. Centro Unido de Detallistas, *supra.* El propósito principal de la doctrina de evidencia sustancial es evitar que los tribunales impongan su criterio sobre el de la agencia administrativa en materia especializada. *Id.*

El expediente de este caso revela que la Oficial Examinadora ordenó al proponente, Hal Development, que cumpliera con la sección 4.02(5) y concedió término para que presentara la información allí requerida. Hal Development pretendió cumplir con lo requerido mediante la presentación de una "Moción informativa" y una "Moción sometiendo propuestas determinaciones de hechos y conclusiones de derecho". En estos escritos, Hal Development señaló que el proyecto propuesto sería único en el Municipio de Gurabo ya que no existía un concepto comercial análogo en el área. Además, señaló que se proponía "darle oportunidad de obtener áreas comerciales a

los pequeños comerciantes que ubican en el Municipio" y que el proyecto sería de provecho para los residentes porque ya no tendrían que acudir al Municipio de Caguas para hacer sus compras y porque reduciría el desempleo en el Municipio de Gurabo. Por último, expresó que de acuerdo al Censo de 1990, la fuerza laboral del Municipio de Gurabo era de 9,422 personas y que los datos oficiales para 1999 y 2000 acreditan un aumento en la fuerza laboral del Municipio.  Añadió que según datos oficiales de la Junta de Planificación, la fuerza laboral del Municipio de Gurabo al 1999 era de 12,300, de los cuales 1,340 eran desempleados, para una tasa de 10.8 por ciento y que a febrero de 2000, la fuerza laboral aumentó a 12,5000 con 11,300 empleos y desempleo de 1,190 para un 9.5 por ciento.

Los datos presentados por Hal Development resultan insuficientes para cumplir con el mandato de la sección 4.02(5) del Reglamento de Procedimientos Adjudicativos. El expediente claramente demuestra que Hal Development se limitó a presentar información vaga e imprecisa sin proveer fundamentos o prueba en apoyo de ésta. Además, Hal Development no presentó evidencia relacionada con lo requerido en los incisos (a), (b) y (c) de la sección 4.02(5) del Reglamento. En el expediente no hay ningún tipo de inventario que detalle los comercios existentes en el casco del pueblo ni en las avenidas principales comerciales o que detalle la oferta de servicios en el

área. Más aún, no sabemos cuál fue el área que la Junta evaluó para determinar el impacto de la parte comercial del proyecto. Por otro lado, del expediente tampoco surge otra prueba que nos permita inferir que la Junta podía evaluar dichos aspectos del proyecto sin recibir la información que requiere dicha sección. Debemos recordar que el expediente administrativo debe incluir, entre otras cosas, toda evidencia recibida o considerada y una relación de todas las materias de las que se tomó conocimiento oficial. 3 L.P.R.A. § 2168 (d) y (e). La única información adicional que hay en el expediente respecto a las exigencias de la sección 4.02(5) es la declaración del Sr. Carlos Martínez, Director de Programas Federales del Municipio de Gurabo. Según la resolución de la Junta, el Sr. Martínez indicó que había una demanda de viviendas en Gurabo y que en el Municipio no había un proyecto comercial como el propuesto. También señaló que los residentes del Municipio acudían mayormente a los centros comerciales en el pueblo de Caguas. *Resolución de Junta de Planificación*, 5 de septiembre de 2000. Esta declaración tampoco resulta suficiente para determinar que la decisión de la Junta estuvo basada en evidencia sustancial.

La información que requiere la sección 4.02(5) es vital para que la Junta pueda evaluar de manera diligente la consulta de ubicación propuesta en el contexto de la actividad comercial existente. Debemos recordar que las

agencias administrativas están obligadas a observar estrictamente las reglas que ellas mismas promulgan y, una vez se ha adoptado una norma, la agencia administrativa debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, objetivos y política pública que la forjaron. T-JAC v. Caguas Centrum, 148 D.P.R. 70 (1999). Además, el Reglamento de Procedimientos Adjudicativos expresamente establece que una consulta de ubicación no se considerará presentada "hasta que se haya cumplido con todos los requisitos de radicación". *Reglamento de Procedimientos Adjudicativos*, *supra*, § 4.01.

Cabe señalar que la Oficial Examinadora no llegó a conclusión alguna respecto a la suficiencia de la prueba sometida por Hal Development. En vez, expresó que "esta Honorable Junta deberá evaluar si la información sometida sobre los datos económicos del Censo del 1990 y los datos sobre la fuerza laboral es información que suple los criterios requeridos en la sección 4.02(5) del Reglamento de Procedimientos Adjudicativos". *Informe sobre audiencia pública*, *supra*, en la pág. 15. La Junta parece haber entendido, sin mayor explicación, que la información presentada era suficiente, dado que aprobó la consulta de ubicación. Sin embargo, a la luz de los requisitos de la sección 4.02(5) de su propio reglamento esta determinación es arbitraria y no la podemos avalar bajo el manto de la doctrina de la deferencia.

Resolvemos que la Junta erró al determinar que la información presentada por Hal Development era suficiente para cumplir con la sección 4.02(5) del Reglamento de Procedimientos Adjudicativos. Dicha decisión no se apoya en evidencia sustancial y, por tanto, no merece nuestra deferencia.

IV.

Por los fundamentos antes expuestos, estoy conforme con la sentencia emitida por este Tribunal en la que revocamos la resolución recurrida y la decisión de la Junta de Planificación aprobando la consulta de ubicación núm. 2000-47-0127-JPU.

Liana Fiol Matta
Jueza Asociada